UNITED STATES of America

v.

Robert BATCHELOR.

Crim. No. 78–280.

United States District Court,
E. D. Pennsylvania.

Feb. 5, 1980.

Elizabeth K. Ainslie, Asst. U. S. Atty., Philadelphia, Pa., for the United States.

Mark A. Klugheit, Philadelphia, Pa., for defendant.

## SUPPLEMENTARY MEMORANDUM

POLLAK, District Judge.

Yesterday, I entered an order directing that Mr. Batchelor receive a new trial. The reasons for that order were explicated at some length from the bench last Friday, February 1. One important reason was my conclusion that it was inconsistent with Disciplinary Rule 7–104(A) of the American Bar Association Code of Professional Responsibility for an Assistant United States Attorney to interview Mr. Batchelor without having obtained the prior consent of Mr. Batchelor's previously retained counsel, and that ultimately this worked to Mr. Batchelor's probable detriment at trial. In reaching that conclusion, I, by necessary implication, rejected the Government's submission that Mr. Batchelor had expressly and effectively waived the presence or consent of counsel. The premise of that rejection was that the Disciplinary Rule does not contemplate waiver.

I appreciate that my legal conclusion may pose something of a problem for lawyers representing the United States in criminal cases, insofar as it places an obstacle in the way of the Government's acceptance of cooperation which a suspect, or one formally charged, may be eager to render but may be reluctant to discuss with, or in the presence of, his counsel. One way of surmounting this obstacle might be for the Government to encourage a person so situated to retain new counsel whose participation in conversations with the Government the client would welcome. There may well be other ways of meeting the Rule's substantial requirements without prejudice to the Government's legitimate prosecutorial needs. Or perhaps, as has been suggested by some students of professional ethics, the Rule itself requires substantial modification—and not alone as it affects criminal matters. See Leubsdorf, *Communicating With Another Lawyer's Client: The Lawyer's Veto and the Client's Interests*, 127 *U. of Pa.L.Rev.* 683 (1979). But in considering ways of living under the present Rule—or of making appropriate changes in the Rule—the profession should not lose sight of the important societal interest at stake in insuring that laypersons not make decisions of major legal implication without the advice of counsel. Aspects of that societal interest which were of particular pertinence for Mr. Batchelor are (1) the difficulty an uncounselled layperson has in marshalling the information and foresight required to conduct negotiations about complex legal issues with a lawyer representing a party whose interests are, in some measure, adverse, and (2) the real likelihood that negotiations carried on by a layperson with opposing counsel, and behind the back of his own counsel, will (a) dampen the layperson's confidence in his counsel, and (b) as a corollary, impose such constraints on later phases of the client-counsel relationship as to handicap counsel's performance in subsequent stages of the representation.[1] In the criminal context, therefore, the Rule to some degree promotes values of constitutional dimension. See cases cited in fn. 2, *infra.*

---

1. In Mr. Batchelor's case, the presence of counsel might not have changed the outcome of the interview or the events thereafter which resulted in Mr. Batchelor's indictment; but, as I pointed out in my bench opinion, defense counsel, informed of what had transpired, would have been better situated to conduct Mr. Batchelor's defense. By the same token, had the Government, before or at trial—preferably on its own initiative, but surely in response to defense counsel's direct question to one of the Government's agents—given defense counsel a full account of the extensive course of dealings between the Government and the defendant, and the ultimate breakdown in their relationship, defense counsel would have been enabled to conduct the probing cross-examination of the key Government witnesses to which Mr. Batchelor was entitled, thus effectively mitigating any potential prejudice to the trial.

In the instant case, my determination that there was a failure to conform with Rule 7–104(A) does not constitute a finding that the Assistant United States Attorney was not conducting his interaction with Mr. Batchelor in entire good faith. The specific difficulty which was to arise between the Government and Mr. Batchelor, and the bearing it may have had on the trial, were not easily anticipated. The formal transcript of their interview reflects great care on the Assistant United States Attorney's part to insure that Mr. Batchelor wished to proceed without counsel. The problem is that the Disciplinary Rule presupposes a different model, and that in this instance the undisclosed departure from the Rule may have handicapped Mr. Batchelor's defense.

■ There may well be good reasons for modifying Disciplinary Rule 7–104(A). But, pending such modification, federal courts ought not to be oblivious to departures from the Rule, however, inadvertent and well-intentioned, if such departures may have had consequences prejudicial to those whom the Rule seeks to protect.[2]

---

**2.** The prosecutorial practice of speaking directly with a criminal defendant, known to be represented by counsel, without affording counsel the opportunity to be present, has been frequently criticized in the federal courts. See *United States v. Crook*, 502 F.2d 1378, 1380 (3d Cir. 1974); *United States v. Brown*, 569 F.2d 236, 249–50 (5th Cir. 1978) (Simpson, J., dissenting); *United States v. Thomas*, 474 F.2d 110 (10th Cir. 1973), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160; *United States v. Springer*, 460 F.2d 1344 (7th Cir. 1972), *cert. denied*, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125; *id.* at 1355 (Stevens, J., dissenting); *United States v. Four Star*, 428 F.2d 1406 (9th Cir. 1970), *cert. denied*, 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253; *Schantz v. Eyman*, 418 F.2d 11 (9th Cir. 1969); *Coughlan v. United States*, 391 F.2d 371, 376 (9th Cir. 1968) (Hamley, J., dissenting); *Mathies v. United States*, 126 U.S. App.D.C. 98, 374 F.2d 312 (1967) (Burger, J.). Breach of the Rule will not entitle the defendant to any specific form of relief, or indeed any relief at all, in many instances. But when, taken in the context of other trial errors, it appears that significant prejudice may have flowed from the breach, I conclude that the grant of a new trial is a fair and proper remedy.