**CONLEY, LOTT, NICHOLS MACHINERY COMPANY, et al., Relators,**

v.

**The Honorable David BROOKS, Judge Presiding, 191st District Court of Dallas County, Texas, Respondent.**

**No. 05–97–00164–CV.**

Court of Appeals of Texas, Dallas.

June 9, 1997.

Jane Makela, George M. Kryder, III, Ann Marie Areadi, Carrington, Coleman, Sloman & Blumenthal, Dallas, for Relators.

David Kress Brooks, Dallas, W.D. Masterson, Kilgore & Kilgore, Inc., Dallas, for Respondent.

Before KINKEADE, WHITTINGTON and MOSELEY, JJ.

## OPINION

KINKEADE, Justice.

Relators Conley, Lott, Nichols Machinery Company, W. Robert Nichols, III, and Nichols Associates, Ltd., seek a writ of mandamus against respondent the Honorable David Brooks. Dana Meador, the real party in interest, sued relators in the underlying litigation. Her attorney, W.D. Masterson, had come into possession of certain privileged documents through no action on his part. Because he had obtained confidential information from those documents, relators moved to disqualify him and his law firm. Judge Brooks overruled the motion to disqualify. Relators request this Court to mandamus Judge Brooks to vacate his order and to grant the motion to disqualify. For the reasons given below, we conditionally grant the writ.

Nichols is the chief executive officer of Conley, Lott, Nichols Machinery Company. Meador served as a financial consultant to the company. On December 12, 1994, Nichols terminated her, and she sued, alleging various causes of action, among them sexual harassment. W.D. Masterson and his law firm represented her.

On October 10, 1994, Nichols had terminated another employee, Tom Dowdle. The company sued Dowdle for fraud. The law firm of Sayles & Lidji represented the company in this suit. The parties negotiated a

settlement. During the course of those negotiations, Robert R. Varner, Jr., an attorney with Sayles & Lidji, wrote Nichols a letter dated June 6, 1995. The letter begins, "What follows is my understanding of the terms upon which the company has agreed to settle the above-referenced matter." As a result, the attorney-client privilege appears to apply to the letter on its face. Among the terms of the settlement was that Dowdle would provide the company with a "[s]worn statement concerning the Dana Meador lawsuit."

In the meantime, Nichols had hired Patricia Peterson as executive secretary. She began to feel insecure in her position. One day, she took some papers that Nichols had left on top of his desk and made copies of them for her own personal files. Among the papers was the Dowdle settlement letter. Other papers that were taken, as it turned out, were covered by the attorney-client privilege or the work product exemption. In February 1996, Peterson resigned, and she too wanted to sue for sexual harassment. She hired Meador's attorney, Masterson, and he filed suit on her behalf for sexual harassment and other claims on July 19, 1996.

On June 12, 1996, relators took Meador's deposition in her lawsuit. She testified that she knew of the statement that Dowdle was to make concerning her lawsuit, as part of the settlement of the Dowdle lawsuit. She said that Peterson had copies of the settlement letter and other documents. Peterson had supplied the copies to Masterson to use as he saw fit.

Alarmed, relators took Peterson's deposition in October 1996, to learn exactly what she might have in her possession. On October 14, relators orally requested Masterson to return the documents. On October 17, relators made a formal written letter demand. Masterson refused. On October 25, relators filed a motion for sanctions in the Meador lawsuit. The motion included a request to disqualify Masterson as Meador's counsel. The trial court conducted a hearing and found that certain documents were in fact privileged. It ordered the documents returned. But it also overruled the motion to disqualify. In a letter to the parties, Judge Brooks stated his reasoning: (1) Masterson was not shown in any way to be involved in improperly obtaining the documents; (2) the privileged nature of the documents was not facially apparent, nor could it be inferred from the circumstances by which they came to Masterson's attention; and (3) Masterson had practiced extensively before Judge Brooks, and his conduct had always comported with the highest standard of ethics. Relators argue that, after they had established that Masterson had obtained confidential information from the privileged documents, Judge Brooks abused his discretion in failing to disqualify Masterson and his law firm.

The American Bar Association has promulgated an ethics opinion squarely on point. ABA Comm. on Ethics and Professional Responsibility, Formal Op. 94–382 (unsolicited receipt of privileged or confidential materials). If a lawyer comes into possession of privileged or confidential materials, by whatever means or however innocently:

> [the] lawyer receiving such privileged or confidential materials satisfies her professional responsibility by (a) refraining from reviewing materials which are probably privileged or confidential, any further than is necessary to determine how appropriately to proceed; (b) notifying the adverse party or the party's lawyer that the receiving lawyer possesses such documents; (c) following the instructions of the adverse party's lawyer; or (d), in the case of a dispute, refraining from using the materials until a definitive resolution of the proper disposition of the materials is obtained from a court.

*Id.* Meador argues that, as the ethics opinion itself concedes, a number of state bar ethics committees have concluded that an attorney may ethically make any use of confidential information that comes inadvertently into his possession. Of the three state bar ethics committee opinions mentioned in the American Bar Association ethics opinion, however, the most recent dates from 1989. Since then, communication technology has advanced dramatically. As the ethics opinion observes, society now makes frequent use of facsimile machines and electronic mail. In-

advertent disclosures of confidential information frequently occur, and today's beneficiary of such disclosures may likely become tomorrow's victim. During oral argument, Masterson argued that the sole factor to consider is whether an attorney acquiring confidential documents is culpable in obtaining the documents—whether he has violated one or more of the Texas Disciplinary Rules of Professional Conduct. We consider such a restrictive standard unrealistic in light of today's telecommunications.

Conversely, relators argue that an attorney should be disqualified whenever she comes into possession of confidential information, regardless of what she does to attempt to remedy the situation. They note that another court has held that, when counsel obtains confidential information of an adversary, there is no need to show actual wrongdoing, or even actual use of the confidential information, in order to disqualify counsel. *Contico International, Inc., v. Alvarez*, 910 S.W.2d 29, 35–36 (Tex.App.—El Paso 1995, orig. proceeding).

*Contico,* however, is scarcely controlling. The Texas Supreme Court overruled it. *Mendoza v. Eighth Court of Appeals,* 917 S.W.2d 787, 788 (Tex.1996) (per curiam).[1] Lorenzo and Elia Mendoza sued Contico and other defendants for the alleged wrongful death of their son. The Mendozas' attorney, James Scherr, appeared to possess a notebook and videotape taken from Contico's investigation file. The trial court judge denied Contico's motion to disqualify Scherr on that basis. *Contico,* 910 S.W.2d at 31. Contico sought mandamus relief in the Eighth Court of Appeals. The Eighth Court conditionally granted relief and ordered the trial court to grant Contico's motion to disqualify. *Contico,* 910 S.W.2d at 45. Dissatisfied with the turn of events in the Eighth Court, the Mendozas filed an original proceeding against that court with the Texas Supreme Court. *Mendoza,* 917 S.W.2d at 788. The supreme court reviewed the record and noted that the trial court compared the notebooks submitted by Scherr and Contico. It could reasonably have concluded that Scherr's notebook was not a copy of Contico's investigation notebook and did not contain any of Contico's confidential information. The evidence surrounding the videotape was also conflicting and the trial court resolved the conflict in favor of Scherr. *Mendoza,* 917 S.W.2d at 790. Because the trial court did not abuse its discretion in concluding that Scherr did not possess any material confidential to Contico, the supreme court conditionally granted the Mendozas relief and ordered the Eighth Court of Appeals to vacate its order conditionally granting Contico relief.

■ Even without *Contico* 's support, however, we address relators' argument. For the same reason we reject Meador's argument that an attorney should never be disqualified unless he personally has been unethical in obtaining confidential information, so do we reject relators' argument that an attorney should always be disqualified if he obtains such information, regardless of the import of the information or its harmlessness. There is no "bright line" test. In this age of advanced telecommunications, an attorney might inadvertently receive a fax transmission that is privileged and yet completely harmless. We decline to hold that the attorney should be automatically disquali-

1. Both parties argue the import of *Contico* in their briefs, but neither mentions the *Mendoza* opinion. We expressly do not fault them for this failure. Because *Contico* was an original proceeding, it has no writ history. The *Mendoza* opinion evidently issued so quickly on the heels of the *Contico* opinion that the *Contico* opinion had not yet appeared in the reporter. As a result, the *Mendoza* opinion has no page references to *Contico.* Therefore, shepardizing *Contico* reveals nothing.

Nor do the styles of the opinions help. Because both cases are mandamus actions, the named respondents are the respective courts. Because the Eighth Court granted mandamus relief, the Mendozas, who were the real parties in interest before it, became the relators before the supreme court. Indeed, the *Contico* opinion does not even name the Mendozas; it refers to them simply as "the plaintiffs." Nothing obvious links the *Contico* opinion to the *Mendoza* opinion.

A citation to a court of appeals mandamus case should include a notation of any subsequent action taken by the supreme court. *See* TEXAS RULES OF FORM chap. 8 (8th ed.1992). While we agree in principle, we recognize, as a practical matter, that it may be nearly impossible to do so, as the *Contico–Mendoza* litigation demonstrates.

fied under those circumstances, any more than that the attorney should never be disqualified under similar circumstances. To hold otherwise might provide too great a temptation to purposefully transfer a little confidential information, just to insure a lawyer's disqualification.

There may be circumstances under which an attorney should be disqualified simply because he comes into confidential information. A trial court might appropriately disqualify an attorney who fails to disclose the fact that he has obtained his adversary's trial notebook on the eve of trial, without any further showing. The confidential nature of the trial notebook should be readily apparent to the recipient attorney. The trial court might well be able to presume harm if it proceeded to trial, without actually having to proceed merely to create a record of harm. We recognize that our holding, rejecting any "bright line" test, requires trial courts to take several factors into consideration. We have every confidence, however, that they are equal to the task, just as they are required to weigh and balance several factors on many other issues.

 We adopt the standard of conduct enunciated by the American Bar Association's formal opinion 94–382 previously outlined in this opinion. We conclude that Judge Brooks did not apply the proper standard. Masterson's lack of culpability in obtaining the documents is not dispositive; what he did after he obtained the documents must also be considered. We certainly need not disagree with Judge Brooks that Masterson's conduct has always comported with the highest standards of ethics. Finally, the confidential nature of many of the documents (which we have reviewed *in camera*) is in fact not readily apparent.

 There remains, however, the Dowdle settlement letter. This letter was written by an attorney, addressed to a client, referring to proposed settlement terms in a pending lawsuit. During oral argument, Meador argued that the letter was not obviously protected by the attorney-client privilege, because the word "confidential" did not appear upon it. We fail to understand, however, how an attorney could possibly read the text of the letter and not realize almost immediately that the attorney-client privilege probably attached. No more is required to trigger the standard of conduct that an attorney must follow. Meador argues that, even if the attorney-client privilege had once attached to the letter, it had been waived. We need not decide this issue. Even if the privilege had been waived, Masterson was obliged to notify relators that he had the letter in his possession. Once relators disputed whether waiver had occurred (as they did), the parties should have obtained a definitive resolution of the issue from the trial court.

Yet Masterson made no effort to notify relators or their counsel that he possessed such a document. Relators' counsel learned that it had fallen into Masterson's hands only when Meador was compelled to testify at her deposition in her lawsuit. Masterson's conduct fell short of the standard that an attorney who receives unsolicited confidential information must follow.

Because it did so, Judge Brooks abused his discretion when he failed to disqualify Masterson and his law firm from further representing Meador. We direct Judge Brooks to vacate his order overruling relators' motion to disqualify and to sign an order granting the motion to disqualify. We are confident that Judge Brooks will comply with our directive and a writ shall issue only if he does not.