**In re NEWS AMERICA PUBLISHING, INC., Eugene M. McKeown and Sandra S. Shaffar, Relators.**

No. 04–96–00810–CV.

Court of Appeals of Texas, San Antonio.

March 11, 1998.

Rehearing Overruled July 9, 1998.

---

and Ron Landreth, the principal owner of the two companies (collectively USSI), as plaintiffs below, are seeking damages for breach of contract and tortious interference with business relations. The Hon. Pat Priest, sitting as a visiting judge for the Hon. Michael Peden, permanent judge of the 285th District Court, denied a motion for sanctions in which defendants requested that plaintiffs' counsel be disqualified for violation of professional responsibility rule 4.02(a). We conditionally grant a writ to order the trial court to rescind its previous order and grant relator's motion for sanctions.

## Background

USSI was under contract to provide computer software services to News America Publishing, Inc. Don Frazier, the former president of USSI, and McKeown and Shaffer, former vice presidents of USSI and at one time consultants to News America, were named as co-defendants with News America in a suit alleging breach of contract and tortious interference with business relations. All defendants were represented by counsel.

USSI nonsuited Don Frazier. When the remaining defendants deposed USSI's owner/corporate representative, Ron Landreth, they learned that on the same day and just prior to the nonsuit, defendant Don Frazier had a private meeting with plaintiff Landreth and one of plaintiffs' attorneys at the law offices of Akin, Gump, Strauss, Hauer & Feld, L.L.P (Akin, Gump). The meeting was "in response to" Frazier's letter to them stating he wanted to meet with them without his attorney present and discuss the lawsuit. It also stated that:

> Prior to meeting with you, I decided to terminate my representation by Mark Cannan. Therefore, I hereby state that I am no longer represented by any attorney in this matter, and I do not desire to be represented by counsel in connection with my discussions with [plaintiffs' attorney Karen Kroesche Gulde], Ron Landreth, and any of the attorneys for Plaintiffs in this case.

Shortly after the meeting, USSI decided to nonsuit Frazier. At that time, Frazier had

Mark J. Cannan, Lang, Ladon, Green, Coughlan & Fisher, P.C., San Antonio, for appellant.

Michael L. Holland, Foster, Heller & Kilgore, P.C., R. Laurence Macon, Karen Kroesche Gulde, Rebecca Simmons, Stephan B. Rogers, Akin, Gump, Strauss, Hauer, Feld, L.L.P., San Antonio, for appellee.

## OPINION

LÓPEZ, Justice.

Appellant's motion for rehearing is denied. Our opinion, issued on May 21, 1997, is withdrawn and this opinion is substituted.

This original proceeding involves the anti-contact rule between a person known to be represented by counsel and an opposing counsel. Relators are the defendants in a lawsuit. Real parties, Users System Services, Inc., USSI Computer Services, Inc.

not communicated to his attorney that their professional relationship was terminated. No notice of this communication or meeting was given to Frazier's counsel or counsel for co-defendants until it was produced seven months later in response to a subpoena duces tecum served on Ron Landreth. One month after that, USSI filed supplemental answers to interrogatories in which it designated Don Frazier as one of their expert witnesses. Relators filed a motion for sanctions seeking to disqualify Akin, Gump for violations of Rule 4.02. The motion was supported by excerpts from the oral deposition of plaintiff Ron Landreth, a copy of the May 12, 1995 letter to opposing counsel Gulde from Frazier, and Frazier's hand-written statement of the same date which referenced an attached type-written memo from Frazier to one Jeff Leist. USSI's counsel, Akin Gump, did not present any additional evidence, however, both parties presented oral argument to the trial court.[1] The trial court denied the motion and relators sought mandamus relief.

Relators claim that plaintiffs' counsel acted in clear violation of DR 4.02(a) and in total disregard of procedural rules 8 and 10. The issue appears to be one of first impression in Texas: Did the trial court abuse its discretion in denying the motion to disqualify plaintiffs' law firm under the circumstances presented here. More specifically, when a client makes a unilateral statement to counsel for the opposing party that he has terminated his own attorney-client relationship and wishes to engage in discussions without his "former" lawyer present, is he still represented by counsel within the context of DR 4.02(a) until he has conveyed this decision to his lawyer?

## Rule 4.02

A lawyer should not orchestrate or encourage contact between herself or her client and an opposing party who is represented by counsel unless the opposing lawyer has consented to such contact.[2] The ethical proscription to such communication is well established.[3] The current Texas version, Rule 4.02(a), is relatively unchanged from its predecessor, DR 7–104(A)(1), which is intended "to preserve the integrity of the client-lawyer relationship by protecting the represented party from the superior knowledge and skill of the opposing lawyer." Robert P. Schuwerk and John F. Sutton, Jr., *A Guide to the Texas Disciplinary Rules of Professional Conduct*, 27A HOUSTON L.REV. 1, 351 (1990). A party is to be protected from the influences of opposing counsel's "calculated and self-serving approaches" as well as from "misguided but well-intended communications." *Id.* at 351–52.

■■■ Comment 1 to the rule states that section (a) "is directed at efforts to circumvent the lawyer-client relationship existing between other persons, organizations or entities of government and their respective coun-

---

1. On pages 6 and 7 of its motion for rehearing, USSI *recites a summary of "pertinent facts of the case as supported by the record, construed in favor of the trial court's order."* What follows, however, is merely a summary of argument made to the trial court. With the exception of one reference to deposition testimony, counsel repeatedly cites only to argument in the statement of the facts from the hearing.

2. Texas Disciplinary Rule of Professional Conduct 4.02(a) states:
 In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so. TEX. DISCIPLINARY R. PROF. CONDUCT 4.02(a) (located at Vol. 3, TEX. GOV'T CODE, State Bar Rules, Tit. 2, subt. G, App. A, art. 9) (Vernon Supp.1996).

References to the current disciplinary rules cited in this opinion have been shortened for the sake of convenience, *e.g.,* "Rule 4.02(a)" or the more traditional "DR 4.02(a)."

3. In an early treatise by David Hoffman, the author stated, "I will never enter into any conversation with my opponent's client, relative to his claim or defense, except with the consent, and in the presence of his counsel." 2 DAVID HOFFMAN, A COURSE OF LEGAL STUDY ADDRESSED TO STUDENTS AND THE PROFESSION GENERALLY 771 (2d ed. Baltimore 1836), quoted in John Leubsdorf, *Communicating with Another Lawyer's Client: the Lawyer's Veto and the Client's Interests,* 127 U. PA. L. REV. 683, 684 n. 6 (1979). Indeed, the American Bar Association has always endorsed the anti-contact rule and every state in the Union has adopted some form of the ABA model. ABA Comm. On Ethics and Professional Responsibility, Formal Op. 95–396 (1995).

sel." TEX. DISCIPLINARY R. PROF. CONDUCT 4.02(a) cmt 1. Comment 2, however, notes that Rule 4.02(a) does *not* cover such communications "as long as the lawyer does not cause or encourage the communication without the consent of the lawyer for the other party." Nor does the rule "impose a duty on a lawyer to affirmatively discourage communications between the lawyer's client and other represented persons, organizations, or entities of government." *Id.* The issue presented here, however, is not whether it was unethical for Landreth to contact Frazier without the knowledge, advice, and consent of Frazier's attorney. Rather, the issue is focused on Akin, Gump's participation in the meeting at their law offices without Cannan's consent. We would be strained to find that Akin, Gump's willingness to provide office space and the presence of a lawyer fell within acceptable conditions of comment 2. The fact that the meeting took place at the law firm in the presence of a firm attorney can only be interpreted as an encouragement of prohibited communication. We are of the opinion that the spirit of this rule requires the ethical lawyer to avoid such communications when in a litigation setting for as long as counsel for that other party has not officially withdrawn from representation.

### The Standard of Review

■ In a mandamus proceeding, relators must show that the district court's refusal to disqualify Akin Gump as plaintiffs' counsel in the pending litigation was an ~~clear~~ abuse of discretion for which there is no adequate remedy by appeal. *See National Medical Enterprises v. Godbey*, 924 S.W.2d 123, 128 (Tex.1996); *Walker v. Packer*, 827 S.W.2d 833. 842 (Tex.1992). When a trial court must make a determination of the legal principles controlling an issue, the court has no discretion in determining what the law is or in applying the law to the facts. "Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appel-

late reversal by extraordinary writ." *Walker v. Packer*, 827 S.W.2d at 840. In *National Medical Enterprises, Inc. v. Godbey*, the supreme court extended the application of a presumption regarding attorney-client confidences to the non-client member of a joint-defense confidentiality agreement. Further, the court ruled that the disqualification of the attorney extended to the entire law firm in this situation. *National Medical Enterp.*, 924 S.W.2d at 131. The court's analysis is based on the *Walker* standard, and the broadening application (and corresponding finding of a abuse of discretion) is supported by references to federal case law. *Id.* at 129–32. We will use a similar approach here.

■ The Fifth Circuit requires that a disqualification under former Canon 9 be analyzed under a two-prong test:

(1) movant must establish that a reasonable possibility that some specifically identifiable impropriety has occurred;

(2) movant must show that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case.

The court must balance the prejudices to each party involved. *Shelton v. Hess*, 599 F.Supp. 905, 909 (S.D.Tex.1984).[4]

In *Shelton v. Hess*, a campus policeman named Shelton filed an employment discrimination suit against the University of Houston and several university officials individually for wrongful termination. *Id.* at 906. One of the defendants, Miller, himself a former campus policeman, communicated with the plaintiff and his attorney at a time when he was represented by the university's counsel. *Id.* at 907. The next week, plaintiff amended his pleadings to drop punitive damage claims against Miller and added a university lawyer as a party-defendant. *Id.* Two and a half months later, Miller informed his counsel that he no longer wanted the attorney-general's office to represent him, instructing them to file a motion to withdraw. *Id.* The next

---

4. The Eighth Circuit has a three-prong test for evaluating rule 4.02, requiring a balancing of these competing interests: (1) the client's interest in being represented by counsel of its choice; (2) the opposing party's interest in a trial free from prejudice due to disclosures of confidential information; and (3) the public's interest in the scrupulous administration of justice. *Id.* This test may be more appropriate under other circumstances.

week, plaintiff's counsel filed a stipulation of dismissal, dropping Miller from the suit. *Id.* Two months later, in another lawsuit against the university he filed a pro se notice of substitution, naming plaintiff's counsel as his attorney. *Id.* In short, it appears that Shelton's attorney was dealing with two disgruntled former campus policemen, one of whom was a defendant in one case, but lodged similar claims against the other defendants in a separate suit. *See id.* In balancing the harm, the district court found that defendants had been more prejudiced by these improper contacts and it disqualified plaintiff's counsel. *Id.* at 910. The fact that Miller had initiated the connection between himself and opposing counsel did not militate against disqualification. *Id.* at 911. The court said that opposing counsel, in order to avoid the appearance of impropriety, should have avoided any form of direct affiliation with Miller. Having failed to do so, the defendants were unfairly prejudiced. *Id.*

In the case before us, the Frazier letter is dated the same day as the meeting with Akin, Gump and the opposing party. Real parties rely on this letter to show there is no violation of any disciplinary or procedural rules. It is undisputed, however, that Mark Cannan, Frazier's attorney of record in the lawsuit, was unaware of the meeting or that his client had terminated his services. No motion to withdraw or substitute counsel was ever pursued by Frazier or by someone on his behalf.

Real parties attempt to distinguish *Shelton* from this situation in two ways. First, they note that federal courts are not required to limit their analysis of professional conduct to Texas rules, rather they are free to look to a national norm of conduct as they see fit. Secondly, this case is factually different from *Shelton* where plaintiff's counsel was undisputedly conducting meetings with an opposing party at a time he was represented by counsel. Real parties argue here that they only met with Frazier after he informed them that he was no longer represented by counsel.

### When the Represented Person Initiates the Contact

Rule 4.02(a) prohibits a lawyer from initiating or even orchestrating through another individual any contact with a represented person unless that person's attorney consents to the contact. This rule does not apply, however, when the represented person is seeking a second opinion from another lawyer. TEX. DISCIPLINARY R. PROF. CONDUCT 4.02(d).

In a more recent Fifth Circuit opinion involving the anti-contact rule, the lower court's order of disbarment was reversed because the court failed to apply a clear and convincing evidentiary standard. *See In re Medrano*, 956 F.2d 101, 102 (5th Cir.1992). On remand for further proceedings, the trial court was directed to focus on who initiated the communications—the attorney or his client's co-defendant in a criminal prosecution. *Id.* at 103. The Fifth Circuit also expected the movant to produce evidence to negate the exception in 4.02(d) about seeking a second opinion were it to be entitled to the relief sought. *Id.* We do not think the drafters of this rule or the commentor to Rule 4.02 meant to imply that counsel might provide a second opinion to an opposing party or a party with whom there is an inherent conflict of interest without the knowledge or consent of his own attorney. Frazier was always free to seek other counsel and should have sought other disinterested counsel if he was concerned about Cannan's representation. Indeed, that is the only ethical contact or advice Akin, Gump could have given Frazier under the circumstances. *See* DR 4.03 cmt. 1.

For more than sixty years, the American Bar Association has taken the position that a client may not waive the protections accorded him by the ethical responsibilities of the communicating lawyer. *See* ABA Comm. on Ethics and Professional Responsibility, Formal Op. 108 (1934) (anti-contact rule does not contemplate client's waiver of its protection). In revisiting its position in a more recent formal opinion, the Committee noted that a number of courts across the country continue to find that "because the ethical prohibition is designed, in part, to protect the effectiveness of the lawyer's representation, the represented person may not waive it." ABA

Comm. on Ethics and Professional Responsibility, Formal Op.95–396 (1995). *See, e.g., United States v. Lopez*, 4 F.3d 1455, 1459 (9th Cir.1993) ("the trust necessary for a successful attorney-client relationship is eviscerated when the client is lured into clandestine meetings with the lawyer for the opposition. As a result, uncurbed communications with represented parties could have deleterious effects well beyond the context of the individual case...."); *People v. Green*, 405 Mich. 273, 274 N.W.2d 448, 453 (1979) (defendant's willingness to speak does "not excuse compliance with the standard of professional conduct prescribed by DR 7–104(A)(1)"); *see also United States v. Batchelor*, 484 F.Supp. 812 (E.D.Pa.1980); *State v. Morgan*, 231 Kan. 472, 646 P.2d 1064, 1068–70 (1982); *State v. Ford*, 793 P.2d 397, 401 n. 4 (Utah App.1990). The Committee further stated:

> While the committee recognizes that not allowing the represented person to waive the Rule's protection may be seen as paternalistic, it believes that Rule 4.2 requires that result. Reflecting the concern that the represented person may not be in a position to make an informed waiver of the presence of counsel, the Rule operates to reduce the likelihood of the represented person engaging in communications that might ultimately prove harmful to her cause by imposing a strict ethical obligation on the communicating lawyer.

ABA Comm. on Ethics and Professional Responsibility, Formal Op.95–396 (1995). Citing to *Lopez*, 4 F.3d at 1462, it is noted that "[t]he rule against communicating with represented parties is fundamentally concerned with the duties of attorneys, not with the rights of parties." *Id.* at 21 n. 49.

**The Lawyers' Ethical Responsibilities Between the Time a Client Decides to Terminate Counsel and the Time the Client Communicates this Fact to that Counsel**

We recognize that any person represented by counsel may terminate that representation. When this occurs, the communicating lawyer is free to communicate with the now-unrepresented person within the guidelines of Rule 4.03. *See* TEX. DISCIPLINARY R. PROF. CONDUCT 4.03 (Vernon 1990).

However, the communicating attorney is obligated to resist the temptation to give advice in this situation, *see id.* at cmt. 1, other than to advise the unrepresented party to obtain independent counsel. *See* Tex. Comm. on Professional Ethics, Op. 461 (1989); TEX. DISCIPLINARY R. PROF. CONDUCT 4.03 cmt.1; Nellermoe & Rodriguez, *Professional Responsibility and the Litigator: A Comprehensive Guide to Texas Disciplinary Rules 3.01 Through 4.04*, 28 ST. MARY'S L.J. 443, 496 (1997). It is undisputed that at the time Frazier met with Landreth and attorney Karen Gulde, Frazier was an opposing party, there were live pleadings on file in the case against him, and his attorney of record was Mark Cannan. The nonsuit occurred after this meeting.

The ABA addresses our situation in its formal opinion as follows:

> As a practical matter, a sensible course for the communicating lawyer would generally be to confirm whether in fact the representing lawyer has been effectively discharged. For example, the lawyer might ask the person to provide evidence that the lawyer has been dismissed. The communicating lawyer can also contact the representing lawyer directly to determine whether she has been informed of the discharge. The communicating lawyer may also choose to inform the person that she does not wish to communicate further until he gets another lawyer.

ABA Comm. on Ethics and Professional Responsibility, Formal Op.95–396 (1995). It is clear from this opinion that the communicating attorney has an ethical responsibility to do more to ascertain the representational status of opposing counsel in ongoing litigation than what was done in this case.

**Procedural Rules 8 & 10**

Relators' counsel, Mark Cannan, entered an appearance on behalf of Frazier in 1993 by filing an answer. Procedural rule 8 designated him the attorney in charge and "until such designation is changed by written notice to the court and all other parties ... said attorney in charge shall be responsible for the suit as to such party." TEX.R. CIV. P. 8

(Vernon Supp.1996). It is relators' position that Cannan had that responsibility—and that communicating attorney Gulde had a corresponding responsibility as a member of the bar to honor it. We agree.

■ Further, under procedural rule 10, an attorney's representation continues in a pending case until the court, upon written motion, grants withdrawal or substitution, as the case may be. TEX.R. CIV. P 10. At the very least, this rule requires that the attorney of record have actual knowledge that his client has terminated their professional relationship. Thus, Cannan's responsibilities did not end when Frazier signed a letter and handed it to Gulde in Akin, Gump's offices. No motion was filed, no notice given, no order signed. When such procedures are ignored, the public's perception of and trust in the system is correspondingly harmed. Thus, where rule 4.02(a) is at issue in the course of ongoing litigation, comment 2 to the rule must be tempered by procedural rules 8 and 10. We, therefore, adopt the ABA's position relative to these procedural rules that "if retained counsel has entered an appearance in a matter, whether civil or criminal, and remains counsel of record, with corresponding responsibilities, the communicating lawyer may not communicate with the person until the lawyer has withdrawn her appearance." ABA Comm. on Ethics and Professional Responsibility, Formal Op.95–396 (1995).[5]

Clearly Frazier has changed sides in this case and, as a result, may avoid personal exposure in the suit. That will undoubtedly cause prejudice to the remaining defendants who shared the same attorney. Counsel for real parties has admitted that Frazier discussed with her his concerns about the "adequacy of his attorney's representation." This topic itself suggests a discussion of confidential information. Further, it suggests he was still represented by an attorney. Although the improper communication of privileged information is difficult to prove without direct testimony from the client, it can reasonably be implied by virtue of the fact that plaintiffs have designated him as a testifying expert on their behalf.

■ While acknowledging that common courtesy here required a phone call between the lawyers, the trial court seemed to indicate that a client is entitled to unilaterally fire his lawyer and go talk to the other side on his own. In making such a decision, however, Frazier did not have the benefit of counsel. In fact, there appears to be a circumvention of respect for the attorney-client relationship. The sanctity of that relationship cannot be overemphasized:

There is nothing more central to what it means to be a client in the American system of justice than to know that, having hired a lawyer, the client need not worry about being taken advantage of by lawyers, with special skills and training, who represent others. Once the client's representation is disclosed, all lawyers are on notice that they must deal with the client's lawyer on all matters, unless the represented person's lawyer provides otherwise. Whether the matter is civil, criminal or transactional, whether a complaint has been filed, an indictment brought, a tax audit commenced or an agreement of sale signed, whether an adverse party, a co-defendant or plaintiff, a witness or a participant in a transaction, all clients who have hired lawyers should benefit from the protection of Rule 4.2. Nor may a lawyer avoid the rule by using non-lawyer agents to undertake what the lawyer is prohibited from doing, by maintaining studied ignorance of the representation, *or by claiming the represented person initiated the contact.*

ABA Comm. on Ethics and Professional Responsibility, Formal Op.95–396 (1995) (con-

---

5. We note that the Texas Supreme Court has relied upon ABA opinions as authority on numerous occasions. *See, e.g., Grant v. Thirteenth Court of Appeals,* 888 S.W.2d 466, 467–68 (Tex. 1994); *Phoenix Founders, Inc. v. Marshall,* 887 S.W.2d 831, 834–35 (Tex.1994). We also note that our sister court of appeals has recently adopted a standard of conduct set forth in anoth-er ABA formal opinion and similarly concluded that the trial court in that case abused its discretion when it failed to apply the proper standard in an attorney disqualification case. *See Conley, Lott, Nichols Mach. Co. v. Brooks,* 948 S.W.2d 345, 349 (Tex.App.—Dallas 1997, orig. proceeding).

currence). Akin, Gump should have taken pains to give immediate notice to Mark Cannan, and if Frazier wanted to carry through with this decision, he should have been encouraged to give advance notice to Cannan and sought substitution of counsel. The anticontact rule is more than common courtesy, it is a professional requirement imposed to protect the client, other parties, and indeed, the very integrity of the adversary system.

## Abuse of Discretion

 Even in a case of first impression, the Texas Supreme Court has issued writs of mandamus where it found an abuse of discretion. In *Huie v. DeShazo,* the real party argued that because the legal question confronting the trial court was an issue of first impression in Texas, the court could not have "abused its discretion" in resolving the issue. The supreme court disagreed and stated:

> "A trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). Consequently, the trial court's erroneous legal conclusion, even in an unsettled area of law, is an abuse of discretion. *See Lunsford v. Morris,* 746 S.W.2d 471 (Tex.1988).[6]

*Huie v. DeShazo,* 922 S.W.2d 920, 927–28 (Tex.1996). We conclude that the trial court failed to apply the proper standard of conduct and, therefore, abused his discretion when he denied the motion to disqualify the attorneys and the law firm representing USSI.

## Inadequate Remedy at Law

 On the issue of inadequate remedy, as confidential information has likely been disclosed to an opposing party, we are confronted with a *Walker v. Packer* situation. Moreover, should Frazier be permitted to testify on behalf of the plaintiffs at trial, the defense is placed in the untenable position of attacking a former client and accusing opposing counsel of unethical behavior in front of a

jury. All of this will do harm to the legal profession in the eyes of the public and particularly in the eyes of those citizens performing their civic duty as members of the jury in this case. This cannot be cured on appeal. *See National Medical Enterp.,* 924 S.W.2d at 133.

For these reasons, we conditionally grant writ of mandamus and direct the trial court to issue an order withdrawing its order denying relators' motion for order of sanction. We further direct the court to enter an order disqualifying the firm of Akin, Gump, Strauss, Hauer & Feld, L.L.P. and, specifically, attorneys R. Laurence Macon and Karen Kroesche Gulde, from representing plaintiffs as attorneys of record in this case.

GREEN, J., dissents, joined by DUNCAN and ANGELINI, JJ.

GREEN, Justice, dissenting.

The issue in this case is whether a nonsettling defendant can force the disqualification of the plaintiff's lawyer and his law firm because the plaintiff's lawyer negotiated a settlement with and co-opted the testimony of a defecting defendant after the latter had terminated the services of his lawyer. The obvious answer is no, but in an opinion based on an erroneous view of the facts and the law, the majority says disqualification is justified. Accordingly, I respectfully dissent.

The majority begins with the mistaken assumption that Akin Gump, representing the plaintiffs, violated the rules of professional conduct by meeting with defendant Don Frazier at a time when he was represented by counsel. This interpretation of the record is not supported by the evidence. It is uncontroverted that it was Frazier who initiated the contact with Akin Gump. What happened when he got there is less clear, but there is at least some evidence that before any discussions took place, Frazier provided Akin Gump with a letter clearly stating he was no longer represented by counsel. Indeed,

---

6. In *Lunsford,* the trial court (first Judge Enoch, then Judge Morris) denied plaintiffs' discovery of defendant's net worth in connection with their claim for punitive damages. The court of appeals denied leave to file the mandamus. The supreme court overturned 100 years of prece-

dence on this issue and held that the trial court abused its discretion in denying discovery on a defendant's net worth where such evidence is relevant to a punitive damages claim. *See Lunsford,* 746 S.W.2d at 473 (Kilgarlin, J.) and at 474 (Gonzalez, J., dissenting).

there is no evidence of any improper discussions between Frazier and the Akin Gump lawyers before Frazier fired his lawyer. Under these facts, the contact between the Akin Gump lawyers and Frazier was not prohibited by the disciplinary rule the majority cites to bar such contact. *See* TEX. DISCIPLINARY R. PROF. CONDUCT 4.02 (Vernon Supp.1998).

In evaluating the propriety of the lawyers' actions with respect to their contact with Frazier, we must consider who Rule 4.02 applies to, and whose interests it is supposed to protect. The anti-contact rule is designed to keep a lawyer from taking advantage of an opposing party who is untrained in the law and who has hired a lawyer to represent his interests. But the anti-contact rule cannot apply to protect unrepresented parties—opposing lawyers must be able to contact *pro se* litigants. Also, as a lawyer disciplinary rule, it cannot apply to non-lawyer parties who initiate contact with represented opposing parties. In short, the anti-contact rule applies only against lawyers and protects only represented parties against contact by opposing lawyers. In this case, the evidence fairly shows that the contact with Akin Gump was initiated by Frazier, and that he was not represented by counsel at the time. Consequently, the anti-contact rule does not apply.

Even if the rule were to apply, the relators do not have standing to complain. As noted, the rule is meant to protect represented parties against contact by opposing lawyers. The relators do not complain that the Akin Gump lawyers improperly contacted them. Rather, the complaint is that the Akin Gump lawyers should not have talked with Frazier before confirming that Frazier's lawyer knew he had been fired. If there is a complaint, it is Frazier who should be complaining. And he is not complaining, of course, because he sought out the contact. Undoubtedly the relators feel victimized by what happened, but their complaint is with Frazier, not Akin Gump.

As a matter of professional courtesy, most lawyers would confirm with counsel that the attorney-client relationship had been severed before entering into discussions with an opposing party. But there is no requirement in the law to do so. If the Akin Gump lawyers

had phoned Frazier's lawyer, Mark Cannan, to let him know Frazier was there, acting on his own to negotiate a settlement, Cannan might have tried to dissuade Frazier from his planned course of action. However, if Frazier was intent on proceeding, there was nothing Cannan or the other defendants could have done about it. Frazier was not prohibited from contacting the plaintiffs' attorneys in an attempt to negotiate his way out of the lawsuit, whether or not Cannan was notified in advance of his termination. The result to the relators is the same either way. Once Frazier decided to go his own way, whether by himself or with new counsel, any defensive strategies or confidential communications between defendants could not have been protected by any belated attempted preemptive measures.

The majority has stripped the plaintiffs of their attorneys of choice because of an act by a party over whom they had no control. Even if it is assumed the Akin Gump lawyers were guilty of some unethical behavior in this, nothing justifies the extreme sanction of disqualification which goes too far in penalizing the ostensibly innocent clients. Any misconduct of the lawyers is a matter best left for disposition through the grievance procedures of the State Bar of Texas.

Under the record in this case, the trial court was entitled to believe that Don Frazier was unrepresented at the time of his meeting with the Akin Gump lawyers, and that it was he, and not the law firm, that initiated the contact. That being the case, it was not an abuse of discretion for the trial court to refuse to disqualify the Akin Gump law firm or the affected lawyers. Because the majority holds otherwise, I respectfully dissent.