# Supreme Court of Texas

No. 24-0613

William W. Ruth,

*Petitioner*,

v.

Commission for Lawyer Discipline,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

JUSTICE HUDDLE, concurring in the judgment.

I join in the Court's judgment but not its opinion.  The Court holds that Rule 4.02(a) of the Disciplinary Rules of Professional Conduct—and, indeed, every disciplinary rule that is prefaced with the phrase "[i]n representing a client"—does not apply to a lawyer who represents himself.  This holding contradicts the rule's plain language and is at odds with the well-accepted premise that a person can simultaneously occupy two roles: in this case lawyer and client.  It follows from this premise that a lawyer who participates in a judicial proceeding pro se is, in fact, "representing a client" within the rule's meaning.  It just so happens that the client *is him*.

Following this logic, as most jurisdictions have, I would hold that a lawyer participating in a judicial proceeding pro se is "representing a client" and thus subject to discipline under Rule 4.02(a). Still, I agree that the attorney in this case should not be subject to discipline, albeit for a narrower reason than the one the Court espouses: he could have justifiably relied on contrary guidance from the Texas Committee on Professional Ethics and, accordingly, should not suffer the unduly harsh punishment imposed. I would therefore reverse the judgment of suspension, as the Court does, for this narrower reason. But, unlike the Court, I would clarify that Rule 4.02(a) applies to self-represented attorneys. This would strengthen the ethical standards the Court's opinion unfortunately degrades.

**I**

The Commission for Lawyer Discipline brought a disciplinary action against William Ruth. Ruth represented himself, and the Commission was represented by counsel. Nevertheless, Ruth included Commission members' email addresses on the electronic service list of filings, causing them to be sent directly to the members' email inboxes. After two of Ruth's filings were served directly on the Commission's members in this way, counsel for the Commission emailed Ruth, informing him that was improper and should stop.

Less than an hour later, Ruth sent Commission counsel a defiant response. Two days after that, Ruth again caused a court filing to be sent directly to Commission members. He did so a total of three times after being instructed that such direct communications were improper.

Ruth also sent a letter directly to the Commission chair, requesting that Commission counsel recuse, and he directly served Commission members with correspondence addressed to the district judge presiding over the case, which set forth various complaints, including that Commission counsel should be disqualified.

No doubt fed up with a cantankerous Ruth, the Commission doubled down, hitting Ruth with a second disciplinary proceeding while the first remained pending. This time, the Commission alleged that Ruth's conduct in the first disciplinary proceeding—serving filings and correspondence on individual Commission members directly rather than through counsel—independently merited punishment. The asserted basis for further discipline? Disciplinary Rule 4.02(a). Dubbed the "no contact" rule, it states:

> In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

TEX. DISCIPLINARY R. PROF'L CONDUCT 4.02(a). The trial court granted the Commission's motion for summary judgment, finding that Ruth violated Rules 4.02(a) and 8.04(a)(1).[1] The punishment for sending the missives directly to Commission members instead of their counsel? A *five-year* active suspension from the practice of law.

---

[1] Rule 8.04(a)(1) prohibits lawyers from "violat[ing] these rules . . . whether or not such violation occurred in the course of a client-lawyer relationship." TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04(a)(1).

Ruth appealed, arguing that Rule 4.02(a) does not apply because he was not "representing a client." The court of appeals disagreed, holding that "a lawyer acting pro se represents himself as a client." 696 S.W.3d 233, 240 (Tex. App.—San Antonio 2024). Ruth petitioned this Court for review.

## II

As when construing statutes, we review the meaning of the Disciplinary Rules of Professional Conduct de novo. *In re Caballero*, 272 S.W.3d 595, 599 (Tex. 2008). Our interpretation therefore begins with the rule's text. *See Third Coast Servs., LLC v. Castaneda*, 726 S.W.3d 201, 206 (Tex. 2025). We must give effect to all a rule's words and, if possible, not treat any language as mere surplusage. *Caballero*, 272 S.W.3d at 599. We interpret the rule's language according to its common, ordinary meaning unless the text supplies a different meaning and in light of its context. *See Malouf v. State ex rels. Ellis*, 694 S.W.3d 712, 718 (Tex. 2024).

Though the aspirational spirit of the disciplinary rules encourages lawyers to "maintain the highest standards of ethical conduct," the rules themselves set the "minimum standards of conduct below which no lawyer can fall without being subject to disciplinary action." TEX. DISCIPLINARY R. PROF'L CONDUCT preamble ¶¶ 1, 7. When "difficult issues of professional discretion" arise in determining whether conduct is proscribed by the rules, lawyers are admonished to look to the "principles" embodied in the rules. *Id.* ¶ 7.

The controlling question is whether Ruth was "representing a client" when he communicated directly with Commission members he

4

knew to be represented by counsel regarding active litigation in which he was representing himself. I begin by examining the meaning of key relevant terms, beginning with "client." The rules do not define "client" in the sense that a dictionary would. But the preamble tells us that "[a] lawyer is a representative of clients." *Id.* ¶ 1. It explains that a lawyer may serve as an advisor, advocate, negotiator, intermediary, spokesperson, or evaluator for a client. *Id.* ¶ 2. In each role, the lawyer zealously pursues the client's interests. *Id.* ¶ 3. This is his raison d'être. This understanding is consistent with the dictionary definition of "client," which is a "person or entity that employs a professional for advice or help in that professional's line of work; esp., one in whose interest a lawyer acts, as by giving advice, appearing in court, or handling a matter." *Client*, BLACK'S LAW DICTIONARY (12th ed. 2024).

In most instances, a "lawyer" and a "client" are two distinct entities. But this is not always the case, and nothing requires that two distinct entities occupy the two roles. As the court of appeals observed, one person may occupy the role—or wear the hat—of both "lawyer" and "client." 696 S.W.3d at 239. That is what happens when a lawyer represents himself in any judicial proceeding.

A hypothetical proves the point. Imagine a docket call in which a trial judge calls a cause number and several people approach the bench in response. The judge asks them to make appearances for the record, so that she may understand who's who. A lawyer acting pro se and wishing to provide a complete answer would state his name, perhaps including the name of his law firm, and add that he represents himself. But what if instead he gave only his name, and the judge asked, "Who's

5

your client?" It is unthinkable that he would respond, "no one" or "I don't have one." He would obviously say "me" or "I'm representing myself."

Ruth, who undisputedly is a lawyer, is also the client—the person for whose interests Ruth is advocating. He meets the dictionary definition of "client" as he is "one in whose interest a lawyer acts." *Client*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also Pro se litigant*, BLACK'S LAW DICTIONARY (12th ed. 2024) (one who "represents oneself in a court proceeding").

The prefatory phrase "[i]n representing a client" is not, as the Court concludes, rendered meaningless by this interpretation. It cabins the rule's application to circumstances in which a lawyer is acting in a representative capacity, i.e., as a lawyer for *someone*. Thus, the rule does not apply when a lawyer chats with his neighbor (who is represented by counsel) about the neighbor's ongoing legal headaches because the lawyer is not representing himself or anyone else in those communications.

Context also supports applying the rule to lawyers acting pro se. First, Rule 3.08(a) states that a lawyer shall not work on a case "if the lawyer knows or believes that the lawyer is or may be a witness . . . unless . . . the lawyer is a party to the action and is appearing pro se." TEX. DISCIPLINARY R. PROF'L CONDUCT 3.08(a)(4). There, the rules make an express exception for lawyers appearing pro se. No such exception exists in Rule 4.02(a). Second, the disciplinary rules nowhere use "pro se" to broaden a rule's application. These contextual clues signal that pro se lawyers are included in the rules' scope unless expressly

6

excepted. Were it otherwise, the exception in Rule 3.08(a)(4) would be surplusage, which we strive to avoid. *See Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 581 (Tex. 2022). Because Rule 4.02(a) does not expressly exclude pro se lawyers, then, it includes them.

As the Court acknowledges, *see ante* at 11, applying Rule 4.02(a) to lawyers acting pro se is consistent with the rule's express purpose, which is to prevent "efforts to circumvent the lawyer-client relationship existing between other persons, organizations or entities of government and their respective counsel." TEX. DISCIPLINARY R. PROF'L CONDUCT 4.02 cmt. 1. Whether a lawyer is representing himself or someone else, directly contacting another represented party regarding that matter circumvents that party's counsel and threatens unfair influence. Rule 4.02 even prohibits "communications that in form are between a lawyer's client and another [represented] person" if the lawyer is "involve[d] in devising and controlling their content" or if the lawyer "cause[s] or encourage[s] the communication." *Id.* cmts. 1–2. The point is to totally avoid the asymmetry inherent in such interactions absent consent. *See In re News Am. Publ'g, Inc.*, 974 S.W.2d 97, 100 (Tex. App.—San Antonio 1998, orig. proceeding), *mand. granted sub nom., In re Users Sys. Servs., Inc.*, 22 S.W.3d 331 (Tex. 1999). Consistent with the preamble, we should apply the principle embodied in the rule to hold that it applies to lawyers who are representing themselves.

This interpretation is not novel. As the Court acknowledges, most jurisdictions to address the issue have interpreted similar no-contact rules to apply to lawyers representing themselves. *See, e.g., In re Steele*, 181 N.E.3d 976, 978–80 (Ind. 2022); *In re Hodge*, 407 P.3d 613, 654–55

(Kan. 2017); *Medina Cnty. Bar Ass'n v. Cameron*, 958 N.E.2d 138, 141 n.1 (Ohio 2011); *In re Disciplinary Action Against Lucas*, 789 N.W.2d 73, 76 (N.D. 2010); *In re Disciplinary Proc. Against Haley*, 126 P.3d 1262, 1267–69 (Wash. 2006); *In re Discipline of Schaefer*, 25 P.3d 191, 199–200 (Nev. 2001); *Runsvold v. Idaho State Bar*, 925 P.2d 1118, 1120 (Idaho 1996); *Sandstrom v. Sandstrom*, 880 P.2d 103, 108–09 (Wyo. 1994); *In re Segall*, 509 N.E.2d 988, 990 (Ill. 1987). For example, in interpreting Indiana's Professional Conduct Rule 4.2, which contains the same "[i]n representing a client" language at issue here, the Indiana Supreme Court rejected arguments similar to Ruth's, including that a pro se lawyer is not "representing a client." *Steele*, 181 N.E.3d at 978–79. Instead, the court reasoned that "an attorney who proceeds pro se in a matter functionally occupies the roles of both attorney and client" and that applying the rule to lawyers acting pro se was consistent with the rule's purpose. *Id.* at 979.

Closer to home, the Fourteenth Court of Appeals reached the same conclusion. *See Vickery v. Comm'n for Law. Discipline*, 5 S.W.3d 241, 259–60 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). *Vickery* held that Rule 4.02(a) applied to a lawyer who "acted as his own attorney" "to negotiate a settlement." *Id.* at 259. The court agreed with other courts that "have held that where an attorney is representing himself, he is necessarily representing a client and can be charged with unauthorized contact." *Id.* It also explained that applying the rule to pro se lawyers furthers the rule's goal "to preserve the integrity of the client-lawyer relationship by protecting the represented party from the

8

superior knowledge and skill of the opposing lawyer." *Id.* (quoting *News Am. Publ'g*, 974 S.W.2d at 100).[2]

To sum up, text, context, policy, and persuasive authorities all support applying Rule 4.02(a) to a lawyer who represents himself. On what basis, then, does the Court reach the opposite conclusion? It does not parse the text but, rather, concludes that the text is unclear. It reasons that when a lawyer acts pro se, "in one sense he is both lawyer and client, and in another sense he is neither lawyer nor client." *Ante* at 11. How can a lawyer acting pro se be *neither* lawyer nor client? Dictionaries, experience, and common sense tell us he is both.

None of this is to say that I applaud the Commission's decision to open a second disciplinary proceeding against Ruth. I am sure more weighty infractions require the Commission's attention, and Ruth's discipline—a five-year suspension—seems wildly excessive. But there was a legitimate path to avoid an unjust outcome in this case and still take the opportunity "to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

Ruth has pointed to an advisory opinion issued by the Texas Committee on Professional Ethics. *See* Tex. Comm. on Prof'l Ethics, Op. 653, 79 Tex. B.J. 234 (2016). The Committee concluded that Rule 4.02(a)

---

[2] These cases are consistent with the ABA's interpretation of Model Rule 4.2, which contains the phrase "[i]n representing a client" found in our rule. *See* MODEL R. PROF'L CONDUCT 4.2; A.B.A. Comm. on Ethics & Pro. Resp., Formal Op. 502, at 4 (2022) ("There are decades worth of disciplinary cases, civil cases, and ethics opinions concluding that a lawyer acting in a pro se capacity may not communicate directly with a represented adversary or other represented person about the subject of the representation without the consent of that person's lawyer, unless the communication is authorized by law or court order." (footnotes omitted)).

"does not apply to a lawyer who is a party to a lawsuit or transaction but does not represent any other party in the matter." *Id.* at 234. We are of course not bound by Committee opinions. TEX. GOV'T CODE § 81.092(c). Such opinions, however, are intended to advise attorneys as to their legal obligations. *See id.* § 81.092(a); *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 503 (Tex. 2015).

"[I]n an ideal world, Texans who seek guidance on [a legal] question from their government could confidently rely on the answer." *In re Carlson*, 712 S.W.3d 71, 72 (Tex. 2025). "We do not live in that ideal world," and as a result Texans have sometimes relied on governmental entities only to later be told by courts that their reliance was misplaced. *Id.* To correct for this imperfection, we have made exceptions to protect due-process rights where individuals have honestly relied on the guidance of governmental entities when that advice turned out to be faulty. *See Mosley v. Tex. Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 268 (Tex. 2019) (vindicating the due-process claim of a woman who followed the government's instructions "only to be informed that in so doing she had failed to exhaust her administrative remedies and was not entitled to judicial review").

I would do the same here. Because Ruth may have reasonably relied upon the guidance provided by the Committee on Professional Ethics, it would be unjust and would implicate constitutional concerns to allow Ruth to be penalized in this case—certainly with a five-year suspension. *See Elliott v. City of College Station*, 717 S.W.3d 888, 898 (Tex. 2025) ("Under the doctrine of constitutional avoidance, our duty . . . [is] to avoid unnecessary constitutional issues." (quotation marks

10

omitted)). It also raises equitable estoppel issues when a governmental entity (the State Bar through the Committee on Professional Ethics) gives an individual advice and then that same entity (the State Bar through the Commission for Lawyer Discipline) turns around and punishes the individual for following its own advice. *See PDT Holdings, Inc. v. City of Dallas*, 712 S.W.3d 597, 606–07 (Tex. 2025). Thus, I would reverse the judgment. That does not preclude us, though, from fulfilling our judicial duty to declare what the text of the rule requires, even though that text was read differently by the court of appeals and the Committee on Professional Ethics. To the extent the Court believes there is a rule of lenity problem, it could cure it for all future cases by declaring Rule 4.02(a) to mean what it says—that it applies to lawyers representing themselves.

The Court's contrary reading renders Rule 4.02(a) inapplicable to pro se lawyers whose direct-to-client communications may be more grave than Ruth's. Even more concerning, Rule 4.02(a) is not the only rule with the prefatory language, "[i]n representing a client." The phrase is in a number of other important rules. *See, e.g.*, TEX. DISCIPLINARY R. PROF'L CONDUCT 3.04(c), 4.04(a). Lawyers should not get a free pass to violate these rules simply because they act pro se. Under the Court's holding, they will.

### Conclusion

By its terms, and consistent with its context and purpose, Rule 4.02(a) applies to lawyers representing themselves. The Court's contrary conclusion regrettably lowers professional standards governing pro se lawyers in "representing" their clients. The Court should instead

11

hold that the rule applies to lawyers acting pro se, which would clarify the standard for lawyers and for the State Bar and its Commission for Lawyer Discipline. But I agree with the Court that the judgment here should be reversed, given Ruth's apparent reliance on an opinion by the State Bar's own Professional Ethics Committee that Rule 4.02(a) does not apply to a lawyer who represents only himself. *See Mosley*, 593 S.W.3d at 268. With these additional thoughts, I concur in the Court's judgment.

Rebeca A. Huddle
Justice

**OPINION FILED:** June 12, 2026