**In re USERS SYSTEM SERVICES, INC., USSI Computer Services, Inc., and Ron Landreth, Relators.**

No. 98–0806.

Supreme Court of Texas.

Argued Feb. 10, 1999.

Decided June 24, 1999.

Rehearing Overruled Sept. 23, 1999.

Luther H. Soules, III, Robinson C. Ramsey, Rebecca Simmons, Stephen B. Rogers, Brad L. Sklencar, San Antonio, for Relators.

Michael Lamoine Holland, Mark J. Cannan, San Antonio, for Respondent.

Justice HECHT delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice OWEN, Justice ABBOTT, Justice O'NEILL, and Justice GONZALES joined.

Rule 4.02(a) of the Texas Disciplinary Rules of Professional Conduct states:

> In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.[1]

The issue in this original mandamus proceeding is whether a lawyer should be disqualified from continuing to represent a litigant in a civil case for meeting with an opposing party, at the party's request, if prior to the meeting the party stated that he was no longer represented by counsel, but his former attorney had not moved to withdraw from the case. A divided court of appeals, sitting en banc, conditionally granted mandamus relief directing the district court to order counsel disqualified in these circumstances.[2] We disagree and therefore direct the court of appeals not to issue its writ.

## I

USSI Computer Services, Inc., Users System Services, Inc., and their principal, Ron Landreth, (collectively "USSI") sued USSI's former president, Donald Ray Frazier, two former vice presidents, Eugene M. McKeown and Sandra S. Shaffar, and a former customer, News America Publishing, Inc., in August 1993 for breach of contract, tortious interference with business relations, and other claims. (USSI has sued others not involved in the matter before us, and we do not include them in referring to "the defendants".) USSI alleged that for years it had provided software systems and computer services to News America, but that after Frazier, McKeown, and Shaffar left USSI, the three went to work for News America and systematically began to destroy USSI's business relationship with News America. USSI was represented by lawyers at the firm of Akin, Gump, Strauss, Hauer & Feld, including Karen Gulde. Defendants were all represented by Mark Cannan.

In May 1995, nearly twenty-one months after suit was filed, Landreth telephoned Frazier to propose a meeting at Akin Gump's offices to discuss their differences

---

1. TEX. DISCIPLINARY R. PROF'L CONDUCT 4.02(a), *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G app. A (1998) (TEX. STATE BAR R. art. X, § 9).

2. *In re News America Publ'g, Inc.*, 974 S.W.2d 97 (Tex.App.—San Antonio 1998, orig. proceeding), and accompanying Order dated March 11, 1998, in Cause No. 04–96–00810–CV.

in the litigation. Frazier accepted. (Landreth also called Shaffar, but she refused to discuss the lawsuit with him.) At the meeting, Frazier presented Gulde with a letter referencing the pending litigation, which stated:

Dear Ms. Gulde:

This is to inform you that I desire to meet with you today to discuss the above-referenced lawsuit without the assistance of counsel. Prior to meeting with you, I decided to terminate my representation by Mark Cannan. Therefore, I hereby state that I am no longer represented by any attorney in this matter, and I do not desire to be represented by counsel in connection with my discussions with you, Ron Landreth, and any of the attorneys for Plaintiffs in this case.

Sincerely,

s/ Donald Ray Frazier

Based on this letter, Gulde agreed to participate in the discussions between Frazier and Landreth. During the meeting, Frazier gave Landreth a handwritten statement describing certain events leading up to News America's limiting its relationship with USSI. Landreth and Gulde did not reach a settlement with Frazier at the meeting, but later that day Gulde filed a nonsuit of all USSI's claims against him.

Neither Gulde nor Landreth ever attempted to contact Cannan—either before meeting with Frazier, or after nonsuiting him—to ask whether he was aware that Frazier had terminated his representation. In fact, Cannan did not know because Frazier had never spoken with him about the matter. Even when Cannan called Frazier about the nonsuit, Frazier did not tell him that he wanted to terminate their relationship. Thus, the court file reflects that Cannan was Frazier's counsel of record when the nonsuit was filed. Not until January 1996, while deposing Landreth, did Cannan learn of the May meeting,

Frazier's letter to Gulde, and Frazier's handwritten statement.

Cannan took no immediate action in response to Landreth's testimony. In June, USSI supplemented its interrogatory answers to identify Frazier as one of its expert witnesses. In July, Cannan again deposed Landreth, who reconfirmed his earlier testimony concerning his meeting with Frazier. Then, in August, a little more than four months before a January 1997 trial setting, defendants News America, McKeown, and Shaffar moved to sanction USSI by disqualifying the Akin Gump firm from representing USSI further, based on Gulde's violation of Rule 4.02(a). At the hearing on the motion, Cannan complained specifically that he had not been contacted before the meeting with Frazier. "Frankly," Cannan told the court, "we [he and Akin Gump] are in the same building. I rather suspect that if a phone call had been made and Frazier took the elevator for two or three floors to my office and told me, 'You're fired, I'm gonna go talk to these people,' everything would have been copacetic, I suppose...." At the conclusion of the hearing, the district court denied defendants' motion.

Defendants petitioned the Court of Appeals for the Fourth District of Texas for mandamus relief. A panel of the court issued an opinion conditionally granting a writ of mandamus. On rehearing en banc, the court issued a new opinion reaching the same conclusion, but over the dissent of three of the seven Justices.[3] The court reasoned that the Landreth–Frazier meeting "at the law firm in the presence of a firm attorney can only be interpreted as an encouragement" of communications prohibited by Rule 4.02.[4] The court was concerned that Frazier made the decision to defect to USSI's side of the lawsuit without benefit of counsel.[5] The court was also troubled that Cannan's responsibilities as

3. 974 S.W.2d 97.

4. *Id.* at 101.

5. *Id.* at 104.

counsel of record under Rules 8 and 10 of the Texas Rules of Civil Procedure could not be terminated by Frazier's letter to Gulde but only by notice to the trial court, which was not given, so that Cannan remained Frazier's counsel of record during the meeting with Landreth and Gulde.[6] Relying principally on Formal Opinion 95–396 of the American Bar Association Committee on Ethics and Professional Responsibility,[7] the court concluded that "the spirit of [Rule 4.02] requires the ethical lawyer to avoid such communications when in a litigation setting for as long as counsel for that other party has not officially withdrawn from representation."[8] Deciding that Akin Gump's conduct had harmed not only the defendants but the legal profession by placing Cannan "in the untenable position of attacking a former client and accusing opposing counsel of unethical behavior in front of a jury",[9] the court held that mandamus relief was necessary to direct the district court to order Akin Gump disqualified from representing USSI.[10] The dissent, stressing that Frazier had made his decision to terminate Cannan freely and had not complained that Landreth or Gulde had taken advantage of him, argued that Gulde did not violate Rule 4.02.[11]

We granted USSI's petition for mandamus relief against the court of appeals and set the case for oral argument.[12]

## II

As we said recently in *In re EPIC Holdings, Inc.*, "[w]e have repeatedly observed that '[t]he Texas Disciplinary Rules of Professional Conduct do not determine whether counsel is disqualified in litigation, but they do provide guidelines and suggest the relevant considerations.'"[13] Technical compliance with ethical rules might not foreclose disqualification, and by the same token, a violation of ethical rules might not require disqualification. Here, however, the parties and the lower courts have all focused the issue of whether Akin Gump should be disqualified from representing USSI on Rule 4.02; hence, so do we.

■ Rule 4.02 forbids a lawyer from communicating with another person only if the lawyer *knows* the person has legal counsel in the matter. Before meeting with Frazier, Gulde knew he was represented by Cannan, but after Frazier gave Gulde his letter, there is no evidence that Gulde knew Frazier was represented by anyone. Defendants do not argue that Gulde had any reason to disbelieve Frazier. The one possible ambiguity in Frazier's letter—that prior to the meeting he had "decided" to terminate Cannan's representation, not that he had actually done it—is resolved by his unequivocal statement in the letter, "I am no longer represented by any attorney in this matter, and I do not desire to be represented by counsel in connection with my discussions with you".

■ Having no reason to doubt Frazier's statement, Gulde was not required to call Cannan before talking with Frazier. Rule 4.02 does not require an attorney to contact a person's former attorney to confirm the person's statement that representation has been terminated before communicating with the person. Confirmation

---

6. *Id.* at 104.

7. ABA Comm. on Ethics and Professional Responsibility, Formal Op. 95–396 (1995).

8. 974 S.W.2d at 101.

9. *Id.* at 105.

10. *Id.*

11. *Id.* at 106 (Green, J., dissenting).

12. 42 Tex. Sup.Ct. J. 160, 163 (Dec. 3, 1998).

13. *In re EPIC Holdings, Inc.*, 985 S.W.2d 41, 48 (Tex.1998) (quoting *National Medical Enterprises, Inc. v. Godbey*, 924 S.W.2d 123, 132 (Tex.1996) (citing *Henderson v. Floyd*, 891 S.W.2d 252, 254 (Tex.1995) (per curiam); *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex.1990); and *Ayres v. Canales*, 790 S.W.2d 554, 556 n. 2 (Tex.1990))).

may be necessary in some circumstances before an attorney can determine whether a person is no longer represented, but it is not required by Rule 4.02 in every situation, and for good reason. The attorney may not be able to provide confirmation if, as in this case, he and his client have not communicated. And while a client should certainly be expected to communicate with his attorney about discontinuing representation, the client in some circumstances may have reasons for not doing so immediately. Frazier, for example, may not have wanted his co-defendants to know of his decision to meet with Landreth and Gulde for fear that they might try to dissuade or deter him. But whether he had a good reason or not, Frazier was not required to tell Cannan that their relationship was terminated before Gulde could meet with Frazier without violating Rule 4.02. A client can discharge an attorney at any time, with or without cause.[14] Of course, a client's delay in telling his attorney that his representation has terminated may have other consequences. The client may be liable for work the lawyer continues to do for him, not realizing that his services have been terminated.[15] The client may also be bound by the attorney's actions done in the good faith belief that he continued to represent the client.[16]

Nor is the client's right to terminate the relationship limited by the attorney's responsibilities to a court as counsel of record for the client. Rule 8 of the Texas Rules of Civil Procedure makes a party's

"attorney in charge" "responsible for the suit as to such party",[17] and Rule 10 specifies when and how counsel may withdraw.[18] But neither rule speaks to the client's right to terminate the representation or requires that notice first be given to the court. On the other hand, the procedure prescribed by Rule 12 for requiring an attorney to show his authority to act for a party[19] presupposes the possibility that an attorney can be counsel of record for a party he is not authorized to represent. The rules contemplate that authorization may not have existed or may cease before the attorney has withdrawn from the case.

■ None of the cases cited by the court of appeals support its conclusion that a communication with a person who has terminated his lawyer's services unbeknownst to that lawyer violates Rule 4.02, and defendants point us to no other cases. In each of the cases cited an attorney communicated with a party who was at the time represented by counsel. The only other authority offered for disqualification is Formal Opinion 95–396 of the American Bar Association Committee on Ethics and Professional Responsibility.[20] That opinion states the following rule:

> When contact is initiated by a person who is known to have been represented by counsel in the matter but who declares that the representation has been or will be terminated, the communicating lawyer should not proceed without

---

14. *Hume v. Zuehl,* 119 S.W.2d 905, 907 (Tex. Civ.App.—San Antonio 1938, writ ref'd) ("[T]he client has the absolute right to discharge the attorney and terminate the relation at any time even without cause, no matter how arbitrary his action may seem ...."); *see also* Tex. Disciplinary R. Prof'l Conduct 1.15 cmt. 4 ("A client has the power to discharge a lawyer at any time, with or without cause....").

15. *See Hume,* 119 S.W.2d at 907; *see also* Tex. Disciplinary R. Prof'l Conduct 1.15 cmt. 4.

16. *See Biggs v. United States Fire Ins. Co.,* 611 S.W.2d 624 (Tex.1981) (holding that an agent

acting within the scope of his apparent authority binds the principal as though the agent actually possessed such authority); *see also* Restatement (Second) of Agency § 119 cmt. c (1958) (noting that revocation of the agent's authority is effective when the agent learns or has reason to know of the revocation).

17. Tex.R. Civ. P. 8.

18. Tex.R. Civ. P. 10.

19. Tex.R. Civ. P. 12.

20. ABA Comm. on Ethics and Professional Responsibility, Formal Op. 95–396 (1995).

reasonable assurance that the representation has in fact been terminated[.][21] The opinion then explains:

Of course, any represented person retains the right to terminate the representation. In the event that such a termination has occurred, the communicating lawyer is free to communicate with, and to respond to communications from, the former represented person. . . .

As a practical matter, a sensible course for the communicating lawyer would generally be to confirm whether in fact the representing lawyer has been effectively discharged. For example, the lawyer might ask the person to provide evidence that the lawyer has been dismissed. The communicating lawyer can also contact the representing lawyer directly to determine whether she has been informed of the discharge. The communicating lawyer may also choose to inform the person that she does not wish to communicate further until he gets another lawyer.

There are some circumstances where the communicating lawyer may need to go beyond determining that the person has discharged her lawyer. . . . [I]f retained counsel has entered an appearance in a matter, whether civil or criminal, and remains counsel of record, with corresponding responsibilities, the communicating lawyer may not communicate with the person until the lawyer has withdrawn her appearance.[22]

We agree, of course, that confirmation of termination of representation may be a "sensible course" in many instances, but that does not make it a prerequisite to communication in every instance under Rule 4.02. We disagree, for reasons already explained, that communication concerning litigation is not allowed if a party's

former lawyer has not withdrawn his appearance. The ABA opinion cites authority for other statements but none for this one.

Accordingly, we conclude on the record before us that Akin Gump cannot be disqualified for violating Rule 4.02 because it did not violate that rule. Even if Akin Gump violated the "spirit" of the rule, as the court of appeals suggested,[23] Gulde's actions did not cause any prejudice that would require disqualification. The court of appeals reasoned that "confidential information has likely been disclosed to an opposing party".[24] The court may have had in mind that Frazier might have disclosed to Gulde information his co-defendants could claim to be privileged. Although as we said in *In re Meador*, "there are situations where a lawyer who has been privy to privileged information improperly obtained from the other side must be disqualified, even though the lawyer was not involved in obtaining the information",[25] defendants have not met *Meador*'s requirements for showing this case to be such a situation. The court of appeals also reasoned:

should Frazier be permitted to testify on behalf of the plaintiffs at trial, the defense is placed in the untenable position of attacking a former client and accusing opposing counsel of unethical behavior in front of a jury. All of this will do harm to the legal profession in the eyes of the public and particularly in the eyes of those citizens performing their civic duty as members of the jury in this case.[26]

But as long as Frazier chooses to align with USSI, the conflict with defendants cannot be avoided by disqualifying Akin Gump. And as we have already concluded, Akin Gump has not behaved unethically in

21. *Id.* (initial uppercase letters omitted).

22. *Id.*

23. 974 S.W.2d at 101.

24. *Id.* at 105.

25. 968 S.W.2d 346, 351 (Tex.1998).

26. 974 S.W.2d at 105.

meeting with Frazier. In sum, the prejudice identified by the court of appeals either does not exist or is not grounds for disqualification. As Cannan told the district court, if only he had been told of Frazier's decision before the meeting, "everything would have been copacetic".

▆▆▆ Finally, we note that defendants did not move to disqualify Akin Gump until almost seven months after they learned of the meeting between Frazier and Gulde. Mandamus relief, which is largely controlled by equitable principles, may be denied a party for lack of diligence.[27] In *Rivercenter Associates v. Rivera,* we held that a party's unexplained four-month delay in asserting its rights showed a lack of diligence that made mandamus relief unwarranted.[28] Cannan argues that he delayed in filing a motion to disqualify Akin Gump until after Landreth's deposition was reconvened because he did not want to accuse Akin Gump of unethical conduct before giving Landreth an opportunity to amend or augment his testimony about the meeting. USSI does not argue, and the district court did not find, that defendants were dilatory in moving to disqualify. A court need not afford mandamus relief to a dilatory party even if an opposing party does not assert lack of diligence as a ground for denying relief. But since Cannan has offered some explanation of the delay, and the record on the issue is unclear, we do not address the matter of diligence.

❖  ❖  ❖  ❖  ❖

We conclude that the court of appeals abused its discretion in issuing its Order dated March 11, 1998, in Cause No. 04–96–00810–CV, conditionally granting writ of mandamus and directing the district court to withdraw its order denying defendants' motion for sanctions and to issue an order disqualifying Akin Gump from represent-

ing USSI. Given our conclusion, we are confident that the court of appeals will promptly vacate its order and deny News America relief. Our writ of mandamus will not issue unless that confidence proves misplaced.

Justice BAKER filed a concurring opinion.

Justice HANKINSON did not participate in the decision.

Justice BAKER, concurring.

I agree with the Court's conclusion that the trial court did not abuse its discretion, and that the Court should mandamus the court of appeals for holding to the contrary. However, I believe that News America's waiver is a more viable theory upon which the trial court could have based its decision. Here, the Court recognizes that we need not afford mandamus relief to a dilatory party, even if an opposing party does not assert lack of diligence as a ground for denying relief. But the Court decides not to consider waiver because "Cannan has offered some explanation of the delay, and the record on the issue is unclear . . . ."

However, on the evidence presented, the trial court could have concluded that News America was dilatory and, under its discretionary authority, the trial court could have disregarded Cannan's explanation of the delay. Accordingly, I concur in the Court's judgment.

Disqualification is a severe remedy. *See Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990); *NCNB Tex. Nat'l Bank v. Coker,* 765 S.W.2d 398, 400 (Tex.1989). In considering a motion to disqualify, the trial court must adhere to an exacting standard to prevent a party from using a motion to disqualify as a dilatory trial tactic. *See Spears,* 797

---

27. *Rivercenter Assocs. v. Rivera,* 858 S.W.2d 366, 367 (Tex.1993).

28. *Id; see also Vaughan v. Walther,* 875 S.W.2d 690, 691 (Tex.1994) (per curiam)

(holding that a motion to disqualify was untimely when it was filed over six months after the grounds were known).

S.W.2d at 656; *Coker*, 765 S.W.2d at 399. One of the requirements of that exacting standard is that a party who does not file a motion to disqualify opposing counsel in a timely manner waives the complaint. *See Grant v. Thirteenth Court of Appeals*, 888 S.W.2d 466, 468 (Tex.1994); *Vaughan v. Walther*, 875 S.W.2d 690, 690 (Tex.1994); *HECI Exploration Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 628 (Tex.App.—Austin 1992, writ denied).

In determining whether a party has waived a complaint, the reviewing court should consider the time period between when the conflict becomes apparent to the aggrieved party and when the aggrieved party moves to disqualify. *See Vaughan, 875* S.W.2d at 690–91; *Wasserman v. Black*, 910 S.W.2d 564, 568 (Tex.App.—Waco 1995, orig. proceeding). A seven-month delay between the discovery of a potential disciplinary rule violation and the filing of a motion to disqualify based on that potential violation has been held untimely. *See, e.g., Vaughan*, 875 S.W.2d at 690 (six and one-half month delay untimely); *see also Enstar Petroleum Co. v. Mancias*, 773 S.W.2d 662, 664 (Tex.App.—San Antonio 1989, orig. proceeding)(a four-month delay untimely).

News America learned of Frazier's communication with Akin Gump on January 24, 1996. News America did not file its motion to disqualify until August 20, 1996, almost seven months later. The time lapse in this case supports a ruling based on waiver and such a ruling was within the trial court's discretion. *See Vaughan*, 875 S.W.2d at 690; *Enstar*, 773 S.W.2d at 664.

Here, the record supports the trial court's decision based on News America's waiver of its right to urge the disqualification because its motion was untimely. Accordingly, I believe the Court's judgment setting aside the court of appeals' order is appropriate. Therefore, I concur in the Court's judgment.