Rupert **POLLARD**, Appellant,

v.

Marie **MERKEL**, Appellee.

No. 05–01–01244–CV.

Court of Appeals of Texas,
Dallas.

Aug. 18, 2003.

Rehearing Overruled Sept. 18, 2003.

Georganna L. Simpson, Law Offices of Georganna L. Simpson, Dallas, for Appellant.

Sally Jo Bybee, and Richard E. Young, Glast, Phillips & Murray, P.C., Dallas, for Appellee.

Before Justices BRIDGES, FITZGERALD, and RICHTER.

## OPINION

Opinion by Justice BRIDGES.

On the Court's own motion, we withdraw our opinion of May 23, 2003, and vacate our judgment of that date. This is now the opinion of the Court.

After a jury trial, the trial court entered an Amended Final Decree of Divorce between Rupert Pollard and Marie Merkel on May 7, 2001. Pollard appeals, asserting seven points of error. Because the trial court abused its discretion in denying Pollard's motion to disqualify Merkel's attorney, we sustain Pollard's first point of error. We reverse the judgment of the

trial court and remand the cause for further proceedings.

Merkel and Pollard were married on September 4, 1964. Merkel filed for divorce on February 25, 1992. For approximately two years after the case was filed, Pollard was represented by Charles H. Robertson and Robert E. Holmes, Jr. of the law firm Robertson & Holmes. In March 1994, Pollard discharged the law firm of Robertson & Holmes as his attorneys in the divorce action. In June 1994, Sally Bybee joined the Robertson & Holmes firm as an associate attorney. Holmes left the Robertson & Holmes firm on May 31, 1995. In 1996, Pollard sued Robertson, Holmes, and the firm for professional malpractice relating to their handling of the divorce proceeding. Bybee left the Robertson & Holmes firm's employ in December 1997. Both the divorce and the malpractice action were still pending after that date.

On June 5, 2000, Merkel filed a Motion for Substitution of Counsel, requesting the court to permit Bybee, then of the firm Glast, Phillips & Murray, P.C., to substitute as her counsel of record. Pollard filed his opposition the following day, arguing that Bybee's employment by Robertson & Holmes should preclude her from representing Merkel. The trial judge held a hearing on June 6, 2000, and apparently granted the motion for substitution, as Bybee continued as counsel of record for Merkel.

The case proceeded to trial. In her opening statement on behalf of Merkel, Bybee argued she would establish Pollard's lack of truthfulness through the testimony of his former lawyer, Holmes:

> You'll also be hearing from several attorneys and legal assistants. Dr. Pollard used to be represented by a man named Rob Holmes, and his legal assistant, Molly Beech.

> And you'll be hearing testimony from them about the many misrepresentations that his client, Dr. Pollard, made. That he was dishonest about other women, to the IRS about taxes. He was dishonest in not filing his tax returns and not paying taxes. He was dishonest to the IRS about his pensions.

> He was dishonest about what he would do, what he would pay. His stories changed as the situation changed. He was dishonest about what assets he owned. What his assets were worth. What his assets were. What was owned by himself personally versus his retirement plan and he often—Mr. Holmes will testify he often changed his story to just adapt to the situation.

> Molly Beech, his legal assistant, will also testify that he carried all of his money in cashiers' checks because he was fearful of the IRS.

After this argument, Pollard moved to exclude any testimony from Holmes and the legal assistant. Out of the presence of the jury, the trial judge heard testimony from Holmes and others, and ruled that neither Holmes nor the legal assistant would be permitted to testify. Pollard further asserted a motion for mistrial and renewed his motion to disqualify Bybee as counsel. The trial court denied these motions. Pollard appeals the denial of his motion to disqualify counsel.

## Standard of Review

■ We review the trial court's ruling on the motion to disqualify for abuse of discretion. *See Metro. Life Ins. Co. v. Syntek Fin. Corp.*, 881 S.W.2d 319, 321 (Tex.1994). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles or acted in an arbitrary or unreasonable manner. *Id.* When we consid-

er factual issues or matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court. *See Multi-Moto Corp. v. ITT Commercial Fin. Corp.*, 806 S.W.2d 560, 567–68 (Tex.App.-Dallas 1990, writ denied). Our review of the trial court's determination of the legal principles controlling its ruling is much less deferential. A trial court has no discretion in determining what the law is or applying the law to the facts. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding) (failure by trial court to analyze or apply law correctly constitutes abuse of discretion).

### DISQUALIFICATION OF ATTORNEY

 Pollard moved to disqualify Bybee under Rule 1.09 of the Texas Disciplinary Rules of Professional Conduct. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (TEX. STATE BAR R. art. X, § 9) ("Disciplinary Rules" or "Rules"). Although the Disciplinary Rules do not determine whether counsel is disqualified in litigation, they "provide guidance and suggest the relevant considerations." *In re Users Sys. Servs., Inc.*, 22 S.W.3d 331, 334 (Tex.1999) (orig.proceeding). A court should not disqualify a lawyer for a disciplinary violation that has not resulted in actual prejudice to the party seeking disqualification. *In re Meador*, 968 S.W.2d 346, 350 (Tex.1998) (orig.proceeding). In appropriate circumstances, however, a court may disqualify an attorney even if no specific disciplinary rule has been violated. *Id.*

Pollard is a former client of the firm of Robertson & Holmes. Representation of a client in a matter adverse to a former client is addressed in Disciplinary Rule 1.09:

(a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:

(1) in which such other person questions the validity of the lawyer's services or work product for the former client; or

(2) if the representation in reasonable probability will involve a violation of Rule 1.05.

(3) if it is the same or a substantially related matter.

(b) Except to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).

(c) When the association of a lawyer with a firm has terminated, the lawyers who were then associated with that lawyer shall not knowingly represent a client if the lawyer whose association with that firm has terminated would be prohibited from doing so by paragraph (a)(1) or if the representation in reasonable probability will involve a violation of Rule 1.05.

Disciplinary Rule 1.05, regarding a client's confidential information, is incorporated into Rule 1.09 in two places. First, under subsection (a), an attorney who "personally has formerly represented" a client may not undertake a representation adverse to that former client "if the representation in reasonable probability will involve a violation of Rule 1.05." Second, under subsection (c), if that attorney leaves the law firm, his or her associates may not represent a client adverse to the former client "if the representation in reasonable probability will involve a violation of Rule 1.05." Rule 1.05 provides:

Rule 1.05. Confidentiality of Information

(a) "Confidential information" includes both "privileged information" and "unprivileged client information." ... "Unprivileged client information" means all information relating to a client or furnished by the client, other than privileged information, acquired by the lawyer during the course of or by reason of the representation of the client.

(b) Except as permitted by paragraphs (c) and (d), or as required by paragraphs (e) and (f), a lawyer shall not knowingly:

(1) Reveal confidential information of a client or a former client to:

 (i) a person that the client has instructed is not to receive the information; or

 (ii) anyone else, other than the client, the client's representatives, or the members, associates, or employees of the lawyer's law firm.

(2) Use confidential information of a client to the disadvantage of the client unless the client consents after consultation.

(3) Use confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known.

. . .

(c) A lawyer may reveal confidential information:

 . . .

 (5) to the extent reasonably necessary to enforce a claim or establish a defense on behalf of the lawyer in a controversy between a lawyer and the client. . . .

(d) A lawyer also may reveal unprivileged client information:

. . .

(2) When the lawyer has reason to believe it is necessary to do so in order to:

. . .

 (ii) defend the lawyer or the lawyer's employees or associates against a claim of wrongful conduct;

 (iii) respond to allegations in any proceeding concerning the lawyer's representation of the client; . . .

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05. Subsections (b)(1) and (b)(3) are of particular relevance here because they address confidences of former clients. A lawyer shall not knowingly reveal confidential information of a former client to anyone else, and shall not knowingly use confidential information of a former client to the disadvantage of the former client after the representation is concluded. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05(b)(1), (3).

Applying Rule 1.09, there is no dispute that an attorney-client relationship was established between the Robertson & Holmes firm and Pollard. Robertson & Holmes represented Pollard in the divorce proceedings for approximately two years. Subsection (a) of Rule 1.09 applies to an attorney who "personally has formerly represented a client in a matter." The record reflects that Robertson, Holmes, and at least one other Robertson & Holmes attorney personally appeared on Pollard's behalf and worked on the case. These three attorneys would be prohibited from representing another person in a matter adverse to Pollard if the representation fell within one of the three strictures of Rule 1.09(a)(1), (2), or (3). The representation of Merkel is the same matter in which Robertson & Holmes represented Pollard and thus falls squarely within Rule 1.09(a)(3). Under Rule 1.09(a)(3), moreover, there is a conclusive presumption

that the client's confidences have been shared with the attorney. *See NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex.1989) (orig.proceeding) (where matters "substantially related," moving party entitled to conclusive presumption that confidences and secrets were imparted to former attorney).

Further, Rule 1.09(a)(2) would prohibit Robertson or Holmes from representing Merkel in the same divorce proceeding, as the representation "in reasonable probability" would involve a violation of Rule 1.05. "The preservation of clients' secrets and confidences is not an option." *Coker*, 765 S.W.2d at 399. Almost any confidence shared by Pollard about his assets, the marital relationship, or any other matter relevant to the divorce would be at risk of disclosure to Merkel to the detriment of Pollard. While the question whether such a reasonable probability exists in any given case is a question of fact, *see* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09 cmt. 4, only one factual determination could be made here: that switching sides in the same divorce proceeding would involve use of "confidential information of a former client to the disadvantage of the former client after the representation is concluded" in violation of Rule 1.05(b)(3). *See Phoenix Founders, Inc. v. Marshall*, 887 S.W.2d 831, 836 (Tex.1994) (orig.proceeding) (motion to disqualify law firm that rehired legal assistant from opposing counsel in same case; court noted "The fact that the present case involves representation of adverse parties in the same proceeding, rather than two separate proceedings, increases the danger that some improper disclosure may have occurred."). Thus, neither Robertson nor Holmes could represent Merkel in this case without Pollard's prior consent.

■ Merkel contends that Bybee did not "personally represent" Pollard, as she was not hired by Robertson & Holmes until after Pollard fired the firm. However, for as long as Bybee remained at the Robertson & Holmes firm, she too was prohibited from representing Merkel against Pollard in the same case in which Robertson & Holmes represented Pollard. Under subsection (b) of Rule 1.09, because neither Robertson nor Holmes "practicing alone" could represent Merkel against Pollard in the divorce, Bybee could not do so as long as she was associated with the firm. Moreover, Robertson's and Holmes's knowledge of Pollard's confidences was imputed to every Robertson & Holmes attorney:

> There is, in effect, an irrebuttable presumption that an attorney in a law firm has access to the confidences of the clients *and former clients* of other attorneys in the firm. One reason for this presumption is that it would always be virtually impossible for a former client to prove that attorneys in the same firm had not shared confidences.

*Nat'l Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 131 (Tex.1996) (orig.proceeding) (emphasis added). Thus, there is an irrebuttable presumption that Bybee had access to Pollard's confidences. Further, the rules protect a broad range of information as client confidences:

> Moreover, virtually any information relating to a case should be considered confidential: the Disciplinary Rules define "confidential information" to encompass even unprivileged client information.

*Phoenix Founders, Inc.*, 887 S.W.2d at 834 (citing TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05(a)).

Holmes's departure from the firm did not lift this prohibition. Under subsection (c) of Rule 1.09, attorneys who were associated with Holmes could not undertake a

representation that "in reasonable probability will involve a violation of Rule 1.05." As noted above, Rule 1.05 would protect Pollard's confidences even after the attorney/client relationship with Holmes and the firm ended. Comment 8 to Rule 1.05 provides, in part, "The duty not to misuse client information continues after the client-lawyer relationship has terminated...." *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05 cmt. 8.

▮ The attorneys remaining at the Robertson & Holmes firm after Holmes's departure were presumed to know Pollard's confidences. *See In re Epic Holdings, Inc.*, 985 S.W.2d 41, 49 (Tex.1998) (orig.proceeding) ("Members of a law firm cannot disavow access to confidential information of any one attorney's client. There is, in effect, an irrebuttable presumption that an attorney in a law firm has access to the confidences of the clients and former clients of other attorneys in the firm."). Representation of Merkel against Pollard in the same divorce proceeding would "in reasonable probability" involve disclosures of those confidences to Merkel in violation of Rule 1.05. *See In re Roseland Oil & Gas, Inc.*, 68 S.W.3d 784, 787 (Tex.App.-Eastland 2001, orig. proceeding) (examples of "reasonable probability" are unauthorized disclosure of confidential information obtained from former client and inappropriate use of confidential information to the detriment of a former client). Finally, there is no evidence Robertson did not remain with the firm when Holmes departed; therefore, subsection (b) of Rule 1.09 would continue to prevent any Robertson & Holmes lawyer from representing Merkel in the divorce. Thus, under subsections (b) and (c) of Rule 1.09, Bybee could not represent Merkel as long as she remained at Holmes & Robertson, regardless of Holmes's departure and the termination of the representation.

Once Bybee left the firm, however, Merkel argues Rule 1.09's restrictions no longer apply. Comment 7 to Rule 1.09 provides: "Finally, should those other lawyers cease to be members of the same firm as the lawyer affected by paragraph (a) without personally coming within its restrictions, they thereafter may undertake the representation against the lawyer's former client unless prevented from doing so by some other of these Rules." Where knowledge of a client's confidences has been only imputed to an attorney, that attorney's departure from a firm will normally remove the imputation of knowledge, and the attorney is free to undertake representation adverse to that client. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09 cmt. 7. Thus, without more, Bybee's departure from the Robertson & Holmes firm could free her from Rule 1.09's restrictions as to the representation of Merkel.

Comment 7, however, should not be interpreted to suddenly permit the use of confidential information to the disadvantage of a former client in violation of Rule 1.05(b)(3) after a lawyer departs from a firm. Bybee argued to the jury, using Pollard's confidential information imparted to Holmes during the same case, that she would prove Pollard did not tell the truth.

At the hearing to exclude Holmes's testimony, Bybee argued she planned to question Holmes about matters on which he had already testified in a deposition in the malpractice case. In the malpractice case, Holmes could ethically disclose Pollard's confidences in order to defend himself against Pollard's accusations. This exception is limited, however; disclosure may be only "to the extent reasonably necessary to enforce a claim or establish a defense on behalf of the lawyer" and only "in a controversy between the lawyer and the client." Rule 1.05(c)(6); *see also Potash Corp. of Saskatchewan, Inc. v. Mancias,* 942

S.W.2d 61, 65–66 (Tex.App.-Corpus Christi 1997, orig. proceeding) ("[T]he policy in Texas is to disallow the attorney's revelation of client information except to the limited extent reasonably necessary to resolve the conflict between the attorney and client."); TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05 cmt. 14 ("In any case [under subsections (c) and (d)], a disclosure adverse to the client's interest should be no greater than the lawyer believes necessary to the purpose."). As the trial judge here recognized:

> I understand that the cases say that if an attorney is sued that the privilege is certainly waived for purposes of that attorney to defend himself. But, this is a different situation. This is a situation where we're talking about the attorney coming back in the very lawsuit in which he represented the client and giving that testimony. That is what I'm having a problem with.

The trial judge heard testimony from Bybee and Holmes relevant to the disqualification motions. Bybee testified she never discussed either the divorce or the malpractice case with anyone while employed at Robertson & Holmes; further, she had never discussed the matter with Holmes after both of them had left the firm. The trial judge apparently believed this testimony, and we do not disturb any credibility findings she made. Assuming the truth of Bybee's testimony, however, Bybee clearly knew of, and used, the confidential information Holmes undisputedly possessed to Pollard's detriment at the trial. This use was in violation of Rule 1.05(b)(3). Under Rule 1.09, therefore, there was more than a "reasonable probability" of a violation of Rule 1.05. A violation had actually occurred, and Bybee should have been disqualified. While the trial judge minimized the harm to Pollard by excluding Holmes's testimony, her ruling did not abrogate the violation of Rule 1.05. Rule 1.05 protects not only the "fiduciary relationship existing between the lawyer and client," but also "the proper functioning of the legal system." See TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05 cmt. 1 ("Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidential information of one who has employed or sought to employ the lawyer."). As the judge herself noted in ruling on the motion to exclude the testimony:

> I understand that there's a malpractice .... but it's getting exceptionally complicated because of the fact that Ms. Bybee originally worked for that firm and then we end up having this— Mr. Holmes come in from that firm and testify in this matter in a case where he represented Dr. Pollard. There is just something that now makes this smell to high heaven.

Where the departing attorney seeks out the former client's confidential information from her former law partner and uses it to the former client's detriment when representing the opposing party in the very same case, disqualification is required. See generally In re Bell Helicopter Textron, Inc., 87 S.W.3d 139 (Tex.App.-Fort Worth 2002, orig. proceeding) (law firm disqualified where it retained non-lawyer consulting expert witness who formerly was employed by opposing party and possessed confidential information from substantially related litigation).

We do not find Merkel's citation of Texas Committee on Professional Ethics Opinions 501 and 527 to be controlling. Tex. Comm. on Prof'l Ethics, Op. 501, 58 TEX. B.J. 492 (1994); Tex. Comm. on Prof'l Ethics, Op. 527, 62 TEX. B.J. 384 (1998). In Opinion 501, the Rules did not prohibit

a lawyer ("Attorney C") from representing a husband in a divorce action even though the wife previously consulted with the lawyer's former law partner ("Attorney A") concerning a divorce, but did not actually hire Attorney A. Because Attorney C had left Attorney A's law firm, and did not personally come within the provisions of Rule 1.09(a), Attorney C could represent the husband as long as there was no violation of Rule 1.05 or any other Texas Disciplinary Rule. The Committee noted:

> Whether Attorney C can represent husband will depend on whether such representation is prohibited by any disciplinary rule other than Rule 1.09. Such a prohibition could result, for example, under Disciplinary Rule 1.05 if Attorney C personally learned confidential information of the wife's while he was previously associated with Law Firm ABC ...

Thus, Opinion 501 would not control where there is a violation of Rule 1.05. Similarly, in Opinion 527, there was no "reasonable probability" of a violation of Rule 1.05. 62 Tex. B.J. at 387.

We understand the trial court's desire to proceed through trial in this very protracted and contentious litigation. Each party had been represented by numerous lawyers; the case had already been remanded once on a prior appeal; the case had been pending for almost a decade; and the jury had been chosen and had heard testimony. Nonetheless, information Pollard entrusted to his former lawyer should not have been used to attack Pollard's veracity at trial of the same matter. The trial court abused its discretion in failing to disqualify Bybee. We therefore reverse the judgment of the trial court and remand the cause for further proceedings.