# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00352-CV

### In re Waterstone Owners Association, Inc.; Hayman Woods, LLC; HW Waterstone, L.P.; and HW Waterstone GP, LLC

## ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## M E M O R A N D U M   O P I N I O N

Relators filed a motion for emergency relief and a petition for writ of mandamus complaining of the trial court's orders granting a motion to compel discovery responses and disqualifying Capshaw & Associates from representing WOA.[1] *See* Tex. R. App. P. 52. We granted the motion for emergency relief in part, staying the disqualification order and the portion of the discovery order compelling document production during the pendency of this original proceeding. *See id.* R. 52.10. Having considered the record, the petition, the response, and relators' reply, we will conditionally grant Relators' petition for mandamus relief in part.

---

[1] This case involves multiple parties, some with similar names. Relators are Waterstone Owners Association, Inc., Hayman Woods, LLC, HW Waterstone, L.P., and HW Waterstone GP, LLC. The real parties in interest are Waterstone Development, LP, Waterstone Development Management, LLC, Rampart Construction Company, LLC, and Winston Capital Corporation. Relator Waterstone Owners Association, Inc. ("WOA") is the plaintiff in the underlying suit; the real parties in interest are the defendants; and the other three relators—Hayman Woods, LLC ("Hayman Woods"), HW Waterstone, L.P. ("HW Waterstone"), and HW Waterstone GP, LLC ("HW Waterstone GP")—are the third-party defendants. We will refer to all four relators collectively as "Relators." We will refer to the real parties in interest collectively as "Defendants." And when necessary, we will refer to the third-party defendants collectively as the "Hayman Parties."

## Factual and Procedural Background

This dispute arises out of the construction and sale of a condominium complex. At the project's inception in 2009, Waterstone Development, LP was the original developer; Waterstone Development Management, LLC was the general partner; and Rampart Construction Company, LLC was the general contractor. In 2010, the Hayman Parties bought the condominium complex, including the individual units still owned by the limited partnership. WOA is the owners' association, which is charged with repairing and maintaining the complex's common elements.

In May 2016, about twenty-nine individual condominium owners[2] entered into settlement agreements and releases with Relators and other entities, under which the homeowners agreed to release any claims they might have against Relators and the other entities. The releases noted that there had been property damage due to water penetration, that an investigation was conducted, and that a repair plan had been developed. Relators and the other entities agreed to assume responsibility for making repairs or maintaining a lawsuit related to the construction defects, and the releases stated that a claim had been made to Rampart. The releases further stated that Relators and the other entities were represented by Capshaw & Associates "for the purpose of identifying who may be responsible for the property damage at the Project and how those claims could be pursued and initiating a claim." Also in May 2016, WOA, represented by Richard Capshaw of Capshaw & Associates, sued Defendants, alleging construction defects.

In August 2017, Defendants filed a third-party claim against the Hayman Parties, asserting that WOA and the Hayman Parties were "owned and/or controlled by the same persons,

---

[2] According to Defendants' pleadings, settlements were signed by about 1/3 of the owners.

2

officers and/or directors," noting that Capshaw had "at relevant times" represented all of the relators, and attaching as an exhibit one of the releases. Defendants argued that the Hayman Parties, who bought the property under an "as-is" clause, were responsible for any alleged defects.

Nine months later, in April 2018, Defendants filed a motion to disqualify Capshaw & Associates from representing WOA, asserting that Richard Capshaw was representing WOA "adverse to a former or current client, [the Hayman Parties], in a substantially related matter," that he was in a position to disclose confidential information attained from representing Relators, and that he was a "necessary and essential fact witness." Defendants stated that Capshaw had violated certain of the Texas Disciplinary Rules of Professional Conduct and that his continuing representation of WOA was prohibited by those rules. They further asserted that when Capshaw represented the Hayman Parties during the execution of the releases, he "acquired information leading to the necessity of his testimony on several contested issues in this matter." They asserted that the information would be substantially adverse to WOA and/or essential to the defenses raised by the Defendants and the Hayman Parties. WOA filed a response stating that "any potential conflicts were disclosed and expressly waived" by Relators, attaching the engagement agreement between Capshaw & Associates and WOA, which stated that the firm had

> previously provided legal services to HW Waterstone, LP. The representation was to identify and provide guidance as to whom and why parties responsible for the construction defects could be required to pay the costs of remediation. Client recognizes the prior representation and expressly waives any claim or potential claim of any conflict. The benefit of the prior services and the suitability of Attorneys to handle the construction claim are acknowledged as beneficial to [WOA].

Defendants replied that disqualification was "the only appropriate remedy" regardless of which disciplinary rule was applied. Defendants stated that disqualification was appropriate under

3

rule 1.09[3] because Capshaw's "dual representation of [WOA] and [Hayman Parties] is 'substantially related' and there was no effective consent or waiver"; that WOA had not met its "heavy burden" to show that "the supposed waivers had the necessary 'full disclosure' of the existence, nature, implications, and possible adverse consequences of the continued common representation," noting that the waiver language did not refer to the "as-is" clause in the contract; that Capshaw should be disqualified under rule 1.06[4] because his representation of WOA was "materially and directly adverse to his prior simultaneous representation of [WOA] and Third-Party Defendants . . . in obtaining the" settlement agreements; and that disqualification was appropriate under rule 1.05[5] because his dual representation had "caused actual prejudice because there is a genuine threat that he may divulge confidential information, if he hasn't done so already." Defendants went on to argue that (1) Capshaw's representation of the Hayman Parties in obtaining the settlement agreements was "substantially related" to WOA's claims against Defendants, (2) the consents were ineffective waivers of any conflict, and (3) Capshaw's dual representation had caused actual prejudice. Although Defendants referred in passing to rule 3.08[6] in their opening paragraph of argument, they did not provide any information as to how Capshaw might be a fact witness.

On the same day Defendants filed their motion to disqualify, Rampart also filed a motion to compel responses to requests for production from the Hayman Parties. The Hayman

---

[3] *See* Tex. Disciplinary R. Prof'l Conduct R. 1.09 ("Conflict of Interest: Former Client"), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A.

[4] *See id*. R. 1.06 ("Conflict of Interest: General Rule").

[5] *See id.* R. 1.05 ("Confidentiality of Information").

[6] *See id*. R. 3.08 ("Lawyer as Witness").

4

Parties responded that Rampart's requests for production were overly broad and not reasonably tailored to disputed matters and that Rampart sought production of communications between the Hayman Parties and Capshaw, in his role as their former attorney.

The trial court held a hearing on the motions and later signed an order granting Rampart's motion to compel and Defendants' motion to disqualify Capshaw & Associates. Relators then filed this petition for writ of mandamus complaining of both decisions.

## Disqualification

Mandamus is the appropriate method to correct a trial court's erroneous order disqualifying counsel because there is no adequate remedy by appeal. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 383 (Tex. 2005) (per curiam). We may not grant mandamus relief unless the trial court abused its discretion, and in asking whether the court abused its discretion with respect to its factual determinations, we may not substitute our judgment for that of the trial court or disturb the court's decision unless it is arbitrary and unreasonable. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (per curiam).

"Disqualification is a severe remedy" and "can result in immediate and palpable harm, disrupt trial court proceedings, and deprive a party of the right to have counsel of choice." *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (per curiam) (cleaned up). Courts therefore "must adhere to an exacting standard when considering motions to disqualify so as to discourage their use as a dilatory trial tactic." *Id.*; *see Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990). Although we may look to the disciplinary rules to decide disqualification issues, those rules "are merely guidelines—not controlling standards—for disqualification motions," and even if

5

the record establishes that a lawyer has violated a disciplinary rule, the party requesting disqualification still "must demonstrate that the opposing lawyer's conduct caused actual prejudice that requires disqualification." *Nitla S.A.*, 92 S.W.3d at 422; *see Spears*, 797 S.W.2d at 656 (disciplinary rules "are not controlling as standards governing motions to disqualify" but have been viewed "as guidelines that articulate considerations relevant to the merits of such motions"). The party seeking to disqualify an attorney bears the burden of establishing that disqualification is proper, and "[m]ere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice." *Spears*, 797 S.W.2d at 656; *see Sanders*, 153 S.W.3d at 57. A "party who fails to file its motion to disqualify opposing counsel in a timely manner waives the complaint." *Vaughan v. Walther*, 875 S.W.2d 690, 690-91 (Tex. 1994) (per curiam).

Rule 1.06 provides that a "lawyer shall not represent opposing parties to the same litigation." Tex. Disciplinary R. Prof'l Conduct R. 1.06, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A. That rule does not apply to this case because, even assuming that there was an indication in the record that WOA and the Hayman Parties were in opposition to each other in this litigation, Capshaw does not seek to represent the Hayman Parties. Those parties are represented by Steven Aldous. Defendants thus cannot rely on an alleged violation of rule 1.06 to support disqualification. Further, Rule 1.06(d) provides, "A lawyer who has represented multiple parties in a matter shall not thereafter represent any of such parties in a dispute among the parties arising out of the matter, unless prior consent is obtained from all such parties to the dispute,"*id.* R. 1.06(e), and as discussed below, Relators showed their consent to Capshaw's representation of WOA.

As for Rule 1.09(a), it states in relevant part:

6

> Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client . . . if the representation in reasonable probability will involve a violation of Rule 1.05;[7] or . . . if it is the same or a substantially related matter.

*Id.* R. 1.09(a). Thus, although a lawyer shall not represent a person in a matter adverse to a former client, as with Rule 1.06, that prohibition does not apply if the attorney obtains his clients' consent. *See id.* Defendants insist that they showed that WOA was adverse to the Hayman Parties. However, the Hayman Parties assert in this proceeding that there is no conflict between them and WOA, WOA explicitly consented to Capshaw's representation after being informed of his prior representation of the Hayman Parties, and the Hayman Parties' attorney represented that they consented to Capshaw's representation of WOA.[8]

Further, Comment 2 to Rule 1.09 states, "Paragraph (a) concerns the situation where a lawyer once personally represented a client and now wishes to represent a second client against that former client," and Comment 10 explains, "This Rule is primarily for the protection of clients and its protections can be waived by them." *Id*. R. 1.09 cmts. 2, 10. Our sister court has observed that

---

[7] Rule 1.05 states that a lawyer may not knowingly reveal or use his client or former client's confidential information except under very limited circumstances. *Id.* R. 1.05.

[8] Defendants argue that Relators have not shown a waiver by the Hayman Parties. They note that Relators cite only to the transcript from the hearing, in which Capshaw stated, "The prior client was informed and consented." However, the attorney for the Hayman Parties, Steven Aldous, was present at the hearing, argued alongside Capshaw against Defendants' motion to disqualify, and stated, "So there really is no conflict between the plaintiff—the homeowners association in this case and my client." Further, Relators' petition for writ of mandamus was signed by Aldous and filed on behalf of all Relators, and the petition notes that Defendants did not offer evidence to rebut Relators' consent to Capshaw's representation of WOA. In seeking to disqualify counsel based on a conflict to which they are not parties, Defendants had the burden of establishing actual prejudice. *See In re Texas Windstorm Ins. Ass'n*, 417 S.W.3d 119, 132-33 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding).

a movant who was not a former client must show *actual prejudice* when seeking to disqualify opposing counsel from representing a client in a matter adverse to that attorney's former client. *In re Texas Windstorm Ins. Ass'n*, 417 S.W.3d 119, 132-33 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding). Another court, in considering Rule 1.06, has held, "Opposing counsel has standing to seek disqualification, if a conflict which violates the rules exists and is sufficiently severe to 'call in question the fair or efficient administration of justice.'" *In re Robinso*n, 90 S.W.3d 921, 925 (Tex. App.—San Antonio 2002, orig. proceeding) (quoting Tex. Disciplinary R. Prof'l Conduct R. 1.06 cmt.17). Defendants seek to assert a privilege that properly lies with Capshaw's current and former clients, not with Defendants. Defendants filed third-party claims against Capshaw's former clients—thereby bringing the Hayman Parties into the dispute—and then sought to disqualify WOA's attorney by asserting a conflict between WOA and the Hayman Parties. It was Defendants' burden, therefore, to establish that disqualification was appropriate.[9]

---

[9] Defendants argue that Relators are seeking to apply an "exception" to Rule 1.06 and thus have a burden to prove the details of Capshaw's disclosure of conflict and the clients' fully informed consent. They cite *State Bar of Texas v. Dolenz*, 3 S.W.3d 260 (Tex. App.—Dallas 1999, no pet.), for the proposition that "at least one case has held that the burden to prove this exception falls on the party asserting it." However, the *Dolenz* court was reviewing a disciplinary proceeding brought against an attorney by the State Bar after a former client filed a complaint. *Id.* at 262-64, 270 ("[W]hether Vail's consent to his business transaction with Dolenz was made after he received full disclosure . . . is in the nature of an avoidance or affirmative defense to professional misconduct. . . . Dolenz had the burden to plead and prove Vail consented to the transaction after full disclosure, if he sought to rely on that as a defense."). This case presents an entirely different procedural posture, making *Dolenz* inapplicable. Defendants' cases defining waiver as a "defensive plea [] in the nature of confession and avoidance" are equally inopposite. *See, e.g.*, *Swiderski v. Prudential Prop. & Cas. Ins. Co.*, 672 S.W.2d 264, 268 (Tex. App.—Corpus Christi 1984, writ dism'd). Waiver as discussed in those cases is not the same concept as the informed consent presented here.

Defendants had the burden of establishing that disqualification, a severe remedy, was proper under the circumstances. *See Nitla S.A.*, 92 S.W.3d at 422. Defendants did not do so and instead provided only speculative allegations of possible prejudice. *See Spears*, 797 S.W.2d at 656, 658. We hold that Defendants did not carry their burden of establishing the propriety of disqualification.[10]

As for Defendants' reference to Rule 3.08 and the possibility of Capshaw being called as a fact witness, "[t]he fact that a lawyer serves as both an advocate and a witness does not in itself compel disqualification," "[d]isqualification is only appropriate if the lawyer's testimony is 'necessary to establish an essential fact,'" and the party seeking disqualification based on an attorney being a fact witness "must demonstrate that the opposing lawyer's dual roles as attorney and witness

---

[10] Furthermore, "[i]n determining whether a party has waived a complaint, the reviewing court should consider the time period between when the conflict becomes apparent to the aggrieved party and when the aggrieved party moves to disqualify." *In re Users Sys. Servs., Inc.*, 22 S.W.3d 331, 338 (Tex. 1999) (Baker, J., concurring); *see HECI Expl. Co. v. Clajon Gas Co.*, 843 S.W.2d 622, 628 (Tex. App.—Austin 1992, writ denied) ("A party who fails to file its motion to disqualify counsel in a timely manner waives the complaint."). The supreme court has held that delays of approximately seven months waive the right to seek disqualification. *See Buck v. Palmer*, 381 S.W.3d 525, 528 (Tex. 2012) (per curiam); *Vaughan v. Walther*, 875 S.W.2d 690, 690-91 (Tex. 1994) (per curiam); *see also Users Sys. Servs.*, 22 S.W.3d at 338 (Baker, J., concurring) (noting that "seven-month delay between the discovery of a potential disciplinary rule violation and the filing of a motion to disqualify based on that potential violation has been held untimely"). Defendants knew of Capshaw's representation of the Hayman Parties in obtaining of the releases with the condominium homeowners no later than the date on which they filed their third-party claims against the Hayman Parties—their petition bringing the third-party claim referenced those releases, noted that the Hayman Parties were represented in that process by WOA's current attorney, and attached a release as an exhibit. Defendants then waited nine months after that date before filing their motion to disqualify, providing no explanation in the motion as to why the delay should be excused and only stating at the hearing that they had "raised these issues originally once we got the third-party discovery back" and decided to file the motion after they were rebuffed when they "kind of called [and said], 'Hey, guys, there's something here.'" *See Buck*, 381 S.W.3d at 528; *Users Sys. Servs.*, 22 S.W.3d at 338 (Baker, J., concurring); *Vaughan*, 875 S.W.2d at 690-91.

will cause the party actual prejudice." *Sanders*, 153 S.W.3d at 57 (quoting Tex. Disciplinary R. Prof'l Conduct 3.08(a)). Defendants simply stated in passing that Capshaw might be a fact witness, made no showing that his testimony would be necessary, and indeed never explained how Capshaw might be called or what he might testify about. They therefore did not carry their burden of showing disqualification based on Rule 3.08 was proper. *See id.*

We conclude that the trial court abused its discretion in granting Defendants' motion to disqualify Capshaw from representing WOA.

## Motion to Compel

We next turn to the trial court's order granting Rampart's motion to compel discovery responses from the Hayman Parties. Mandamus is the appropriate vehicle to challenge a trial court order erroneously granting a motion to compel discovery, particularly when the sought information is confidential. *See In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 256 (Tex. 2005). The supreme court has explained:

> A party may assert a privilege by withholding documents and stating in its response to a discovery request: "(1) information or material responsive to the request has been withheld, (2) the request to which the information or material relates, and (3) the privilege or privileges asserted." Tex. R. Civ. P. 193.3(a). Upon request, the withholding party must serve a privilege log describing the withheld materials, without revealing privileged information, and asserting a specific privilege for each withheld item. *Id.* In addition to the privilege log, a prima facie case for the privilege must be established by testimony or affidavit. . . . Thereafter, if the trial court determines an in camera inspection is required, the court may order the documents tendered or the party asserting the privilege may, on its own initiative, tender the documents to the trial court.

10

*Id.* at 261; *see also In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (party asserting claim of privilege has burden of showing its application "but if the party makes a prima facie showing of privilege and tenders documents to the trial court, the trial court must conduct an in camera inspection of those documents before deciding to compel production").

In our order granting emergency relief to Relators, we left in place the portion of the trial court's order that required the Hayman Parties to provide a privilege log related to the asserted privileged documents. Defendants' requests for production numbers 1, 6, 25, 39, 45, and 46 specifically seek information and documents between the Hayman Parties and Capshaw, their former attorney, and the Hayman Parties asserted attorney/client privilege in the face of those requests. We conditionally grant mandamus relief as to those six requests for production. The trial court shall allow the Hayman Parties an opportunity to assert the privilege pursuant to rule 193.3 and shall then examine the Hayman Parties' assertion of privilege and determine whether they carried their burden of showing that the attorney-client privilege applies. *See E.I. DuPont*, 136 S.W.3d at 223.

As to the trial court's other discovery rulings, we cannot conclude that the court abused its discretion. *See In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 181 (Tex. 1999). We therefore deny mandamus relief as to Rampart's requests for production other than requests number 1, 6, 25, 39, 45, and 46.

**Conclusion**

We have determined that the trial court abused its discretion in disqualifying Capshaw & Associates from representing WOA and that, in light of their being required to produce a privilege log, the Hayman Parties should be given an opportunity to properly establish that the attorney-client

11

privilege applies to Rampart's requests for production 1, 6, 25, 39, 45, and 46. We direct the trial court to vacate its order of May 15, 2018, as far as it (1) disqualified Capshaw & Associates and (2) ordered the Hayman Parties to produce documents responsive to requests for production 1, 6, 25, 39, 45, and 46. The trial court should conduct further proceedings related to those requests for production as necessary. We are confident the trial court will comply, and our writ will issue only if it does not.

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Goodwin, and Bourland

Filed:   August 23, 2018

12